In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 04-2306, 04-2322 & 04-2343

JOAN SCHMUDE, Administrator
of the estate of Louis Schmude,

*Plaintiff,*

*v.*

MICHAEL F. SHEAHAN, Sheriff
of Cook County, WILLIAM SPATZ,
PATRICIA PULTZ, et al.,

*Defendants.*

APPEALS OF: EDWARD R. THEOBALD,
ANTHONY PINELLI, and ALAN R. BRUNELL,

*Appellants.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4580—**Charles R. Norgle, Sr.**, *Judge.*

---

ARGUED MAY 2, 2005—DECIDED AUGUST 18, 2005

---

Before BAUER, EASTERBROOK, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* The district court imposed sanctions on appellant attorneys Edward Theobald, Anthony Pinelli, and Alan Brunell for improperly seeking appointment as Special State's Attorneys and fees in state court after the underlying case had been removed to federal court.

The attorneys—in conjunction with Cook County, which the district court ordered to file an appearance— appeal. We reverse and vacate the sanctions order issued by the district court. We also deny Cook County's motion for certification to the Supreme Court of Illinois.

## I. Background

On June 20, 2000, Plaintiff Joan Schmude filed suit in the Circuit Court of Cook County, Illinois, against Cook County Sheriff Michael Sheahan, claiming that he was liable under 42 U.S.C. § 1983 and various state law theories for the death of her husband, Louis Schmude, while he was in the sheriff's custody. Two days later, three Sheriff's deputies—William Spatz, Patricia Pultz, and Lawrence Koscianski—were indicted and charged with first-degree murder in connection with Mr. Schmude's death. Mrs. Schmude amended her complaint to name the three Sheriff's deputies. On July 28, the Sheriff removed the case to federal court.

On December 22, 2000, attorneys Theobald and Brunell filed appearances in federal court. Theobald also filed a motion with the district court for appointment as Special State's Attorney under 55 ILL. COMP. STAT. 5/3-9008 to represent defendant Spatz in the civil case; Brunell filed a similar motion with respect to defendant Koscianski. Several days later, attorney Ficaro filed an appearance and a motion to be appointed to represent defendant Pultz. The motions were taken under advisement. On December 29, the court ordered a stay of all proceedings pending the outcome of the criminal prosecution. In connection with the stay, the district court struck the three aforementioned motions—along with a motion Theobald had made to remand the case to state court—for case control purposes. The court allowed for reinstatement of the motions within 28 days of the lifting of the stay order.

The criminal case concluded on March 12, 2002. Directly thereafter, attorney Theobald filed another motion with the district court to remand the civil case to state court. At the March 22, 2002 hearing on the motion, the district judge stated that before he lifted the stay and ruled on Theobald's motion to remand, he wanted to determine who would represent the defendants in the case. He explained that he had concerns about appointing Theobald, Brunell, and Ficaro as Special State's Attorneys, since their prior experience with the State's Attorneys office could, in his opinion, create a conflict of interest. The attorneys responded that they were not presently seeking appointment as Special State's Attorneys and urged the court to decide the remand motion instead. The district judge asked if that meant they were withdrawing their motions to be appointed Special State's Attorneys. The attorneys indicated that if there were motions for appointment pending, they were withdrawing them. The district court then vacated the stay.

On April 22, 2002, the district court denied the motion to remand the case to state court. On April 30, attorneys Theobald, Brunell, Ficaro, and Pinelli filed petitions in the Circuit Court of Cook County, seeking appointment as Special State's Attorneys in the federal action. The petition also sought the appointment of Pinelli as additional counsel for defendant Pultz. The attorneys stated in their petition that the underlying case had been removed to federal court, but they did not disclose to the state court their previous discussion with the district judge about appointments. On May 3, 2002, the state court granted their motion. The state court's order indicated that it retained "jurisdiction over the appointments for the purposes of awarding the above Special State's Attorneys expenses and attorney's fees on a regular basis."

Attorneys Theobald and Brunell periodically sought and obtained fees in the state court during the year that followed. They never discussed their appointments with the

district court, though they did advert to the matter in passing. For example, at a hearing held on March 26, 2003, Theobald told the district judge, "I am a Special State's Attorney, and so is Mr. Brunell." Theobald made other similar statements at hearings held on April 30, 2003, and May 15, 2003.

It was over a year before the issue of appointments was fully discussed again in the district court. On May 23, 2003, the court held a hearing on attorney Ficaro's motion to withdraw as counsel, during which the judge asked who would replace him. Attorney Pinelli responded that he would take over defendant Pultz's representation and explained that he had already filed an appearance as co-counsel. The judge asked Pinelli if he was Pultz's private attorney. Pinelli responded, no, he had been appointed by the state court. The judge was surprised to hear that and stated that counsel were not permitted to pursue any proceedings related to appointment as Special State's Attorneys in state court:

> You are not special attorneys appointed in this case. Once this case was removed, it was removed, and no attorney, once removed, could go before any state judge and file a motion. And any order that would be entered under those circumstances would be an improper order and unenforceable. Once the case is removed, just this Court makes the decisions . . . . If you are here, it is because you are employed by individuals.

Theobald, speaking on his own behalf and that of the other attorneys, revealed that the state court had appointed all of them.[1] The judge responded, "[Y]ou can be here as private attorneys. But you are not Special [State's] Attor-

---

[1] Attorney Brunell was not present at the hearings that were held on May 23, 2003, or March 22, 2002. However, he authorized attorney Theobald to speak on his behalf on both occasions.

neys as far as this court is concerned." The judge then asked Pinelli whether he would be proceeding as Pultz's private attorney. Pinelli answered that he needed time to consider what he had heard, to which the judge responded: "Well, you are here only as private counsel." The judge characterized his view as an "order."

Several months passed before the issue of appointments arose again. In September 2003, the parties reached a settlement. The district judge shortly thereafter learned that the attorneys had continued to obtain attorney's fees from the state court, despite his warning that such conduct was improper. On October 2, 2003, the court notified the attorneys that it planned to proceed on a Rule to Show Cause as to why it should not impose sanctions. On October 8, the court issued the Rule, stating for its basis counsel's disregard of court orders, improper actions in returning to state court for appointment and fees after removal, and violation of their duty of candor. The underlying case was dismissed on October 20, but proceedings concerning the court's Rule continued.

The attorneys responded to the Rule by filing motions, answers, and other pleadings, including a motion to recuse the judge from the case. The district court denied the attorneys' motions and found their conduct sanctionable. On May 4, 2004, the court issued its final judgment imposing sanctions on the attorneys. Each counsel was ordered to disgorge all of the fees he had received. Accordingly, Theobald was ordered to disgorge $301,321.29, Brunell was ordered to disgorge $51,874, and Pinelli was ordered to disgorge $28,230. The court also observed that Theobald had sought in state court to have a Special State's Attorney appointed to defend him in the sanctions proceedings, and enjoined all three counsel from "seeking attorney fees or receiving remuneration from Cook County for their representation of their clients in this case or for defending against the Rule to Show Cause and resultant proceedings."

Finally, each counsel was ordered to pay a $5,000 fine directly to the court. The attorneys timely appealed the court's May 4 order.

## II. Discussion

The appellants argue that the district court improperly invoked its inherent power to impose sanctions. *Amicus curiae* appointed to represent the district court maintains that the court's sanctions were valid for primarily two reasons. First, *amicus* contends that counsel were never properly appointed Special State's Attorneys because removal of the case to federal court had stripped the state court of jurisdiction. Second, *amicus* claims that even if the district court was wrong about the propriety of the state court's appointments, its sanctions were appropriate nonetheless in light of counsel's conduct.

The Supreme Court has recognized that all courts are vested with an inherent power "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also Dale v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984, 985-86 (7th Cir. 2002). This inherent power includes the capacity to sanction counsel for "willful disobedience of a court order" and "bad faith" conduct. *Chambers,* 501 U.S. at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). Because these inherent powers are potent, they must be exercised with caution and restraint. *Chambers*, 501 U.S. at 44. We review the issue of whether a district court properly invoked its inherent powers *de novo. United States v. Johnson*, 327 F.3d 554, 559 (7th Cir. 2003). If the court properly invoked its inherent powers, we review its imposition of sanctions pursuant to those powers for abuse of discretion. *Chambers*, 501 U.S. at 55; *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1066 (7th Cir.

2000). We review questions of statutory interpretation and jurisdiction *de novo*. *Olson v. Risk Mgt. Alternatives, Inc.*, 366 F.3d 509, 511 (7th Cir. 2004); *Midland Coal Co. v. Office of Workers' Compensation*, 149 F.3d 558, 561 (7th Cir. 1998).

The district court imposed sanctions because it believed that counsel had circumvented its jurisdiction by petitioning the state court for appointment. The court's view was premised on the notion that removal jurisdiction gave it exclusive authority to appoint Special State's Attorneys under 55 ILL. COMP. STAT. 5/3-9008, the Illinois law authorizing such appointments. That law reads in relevant part:

> Whenever the State's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, *the court in which said cause or proceeding is pending may appoint some competent attorney* to prosecute or defend such cause or proceeding . . . .

55 ILL. COMP. STAT. 5/3-9008 (emphasis added). The position taken by the district court does not comport with the plain language of the statute. The statute empowered the district court to appoint Special State's Attorneys in the matter pending before it, but it did not state that it was the *only* court that could make such appointments.

The district court also incorrectly concluded that the issue of who had authority to appoint Special State's Attorneys was dictated by removal jurisdiction. The removal of a case can empower federal courts to appoint Special State's Attorneys, but it cannot strip a state court of its fundamental authority to do the same. Just as a state or federal court has no interest in whom a private party selects as counsel, provided he is a licensed attorney, a federal court has no

interest in whom the State of Illinois chooses to represent its interests and how much it pays them. A federal court is no better situated than a state court to assess an attorney's fitness for the job or the legitimacy of his fee submissions. Put simply, a federal court can play a role in appointment matters under 55 ILL. COMP. STAT. 5/3-9008, but not to the exclusion of state courts. Consequently, the district court was obligated to honor legitimate appointments made by the state court, regardless of where the case was pending when the appointment was made.

Our finding that federal courts presiding over a case share authority with state courts to appoint Special State's Attorneys under 55 ILL. COMP. STAT. 5/3-9008 runs counter to the position advocated by Cook County in its briefs. Cook County argues that federal courts never have jurisdiction to appoint Special State's Attorneys and asks that we certify to the Supreme Court of Illinois the question of whether a federal court can ever make such appointments under 55 ILL. COMP. STAT. 5/3-9008. We consider several factors in deciding whether to certify a question to the state supreme court, the most important of which is whether we feel genuinely uncertain about an issue of state law. *State Farm Mut. Auto. Ins. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001). We are confident that the statute's permissive language anticipates circumstances under which both state and federal courts can appoint Special State's Attorneys. The confusion here arose not from the text of the law, which is clear, but from concerns about jurisdiction and federalism, which we can resolve. As a result, we decline the invitation to certify the question.

Our analysis, however, does not end here. *Amicus* contends that even if the district court was mistaken about the state court's authority, its invocation of inherent powers to sanction the attorneys was proper because counsel willfully disobeyed a direct order. District courts can sanction attorneys for not obeying orders. *Chambers*, 501 U.S. at 43-

44. Even if an order was issued in error, the collateral bar doctrine obligates counsel to follow it. *Madej v. Briley*, 371 F.3d 898, 899-900 (7th Cir. 2004). However, a court's oral directive, without more, is not binding on counsel. *Bates v. Johnson*, 901 F.2d 1424, 1427-28 (7th Cir. 1990). To be enforceable, a command must be in the form of "a separate document, with a self-contained statement of what the court directs to be done." *Id.* at 1428. In the instant matter, the district judge expressed his views in open court but did not issue an official, written order barring the attorneys from seeking appointment and compensation from the state court. Further, the scope of the court's written order denying counsel's motion to remand did not encompass the issue of appointments. Since the court's oral command was non-binding, it was improper for it to invoke its inherent power against the attorneys for ignoring it.

*Amicus* also claims that the district court's sanctions were appropriate because the attorneys were dishonest with the court. Lawyers owe courts a duty of candor. *Beam v. IPCO Corp.*, 838 F.2d 242, 249 (7th Cir. 1988). *Amicus* argues that the attorneys failed to meet this obligation by not being completely forthcoming about their appointments and ongoing dealings with the state court over fees, especially after the district court voiced concerns about appointing them and warned counsel that seeking appointment and compensation from the state court was improper. We sympathize with the district court on this point. At oral argument, we asked attorney Theobald why he chose not to disclose to the state court the concerns that the district judge had raised about appointing him and his colleagues. Like the court below, we found his responses unpersuasive and manner somewhat evasive.

Nonetheless, the attorneys were under no duty to notify the district court of their appointments because the matter had no bearing on the merits of the federal litigation and concerned only them and the State of Illinois.

*Amicus* cites case law for the proposition that sanctions are appropriate when an attorney is not candid with the court, but these decisions can be distinguished on their facts. In *Cleveland Hair Clinic, Inc. v. Puig*, an attorney filed a lawsuit in state court in an attempt to make an end run around an unfavorable evidentiary ruling by the district court. The district court sanctioned the attorney for not giving notice of his state court filing. *Puig*, 200 F.3d at 1066. We held that the sanctions were not an abuse of discretion because counsel had a "continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation." *Id.* at 1067-68. By contrast, the attorneys' dealings with the state court in this case could not have impacted the outcome of the pending federal litigation. Nor was this situation like the one in *IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.,* 266 F.3d 645 (7th Cir. 2001). In *IDS Life Ins.*, we held that it was appropriate to sanction an attorney who had secretly filed a frivolous lawsuit in state court which needlessly complicated pending federal litigation to the detriment of the other party. *Id.* at 654. In the instant matter, the attorney's dealings with the state court neither protracted matters in the district court nor increased the cost of litigation for any of the parties.

In sum, the district court's sanctions were inappropriately based on a misunderstanding of the state court's authority to appoint Special State's Attorneys and handle their fees and expenses. Finally, while we encourage attorneys to be forthcoming in their dealings with the court, the district court abused its discretion by sanctioning the attorneys for not being candid about matters they had no duty to disclose.

With this result, we see no need to address the attorneys' additional concerns about the procedural propriety of the court's order.

### III.  Conclusion

For the foregoing reasons, we VACATE the district court's order imposing sanctions and REMAND for further proceedings in conformity with this opinion. Any amounts paid by the attorneys pursuant to the district court's sanction orders should, of course, be returned to the attorneys.

Finally, we DENY Cook County's motion for certification to the Supreme Court of Illinois.

A true Copy:

　　　　Teste:

　　　　　　　　　　_____

　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　*Appeals for the Seventh Circuit*