In the

# United States Court of Appeals

### For the Seventh Circuit

No. 04-4304

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TONY M. LISTER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 CR 074—**John C. Shabaz**, *Judge.*

ARGUED SEPTEMBER 9, 2005—DECIDED DECEMBER 28, 2005

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* Tony M. Lister pleaded guilty to one count of distribution of a controlled substance, 21 U.S.C. § 841(a)(1), after arranging for the sale of more than five grams of cocaine base to a government agent. In his pre-sentencing interview, Lister admitted to trafficking at least 1.8 kilograms of cocaine base over the course of the four years prior to his arrest. At the sentencing hearing, Lister's attorney challenged certain facts within the presentence investigation report, but Lister raised no personal objections, even under judicial questioning. The district court found the presentence investigation report to be reliable by a preponderance of the evidence and sentenced him to 405 months of incarceration. On appeal,

petitioner claims error for the district court's refusal to grant credit for his acceptance of responsibility, the length of his sentence, and the district court's findings on relevant conduct. We affirm.

## I.  Background

On December 6, 2001, Torrence Sims telephoned Lister and asked him to supply one and one-half ounces of cocaine base for $1100. Sims was acting on behalf of the government. Lister took up the request and arranged the transaction through Carlos Hodges, who procured and delivered the cocaine base for the requested cost. The entire transaction, including the telephone calls and the delivery of about 36 grams of a mixture containing cocaine base, was monitored by a law enforcement agent.

On May 24, 2004, a grand jury returned an indictment charging Lister with distributing more than five grams of cocaine base, 21 U.S.C. § 841(a)(1). A superseding indictment was filed on August 4, 2004, restating this count among others. Lister ultimately struck an agreement with the government and pleaded guilty to the original charge on October 15, 2004, before Judge Shabaz.

At the plea hearing, Judge Shabaz informed Lister that the plea agreement was merely a recommendation that the court could reject "without permitting you to withdraw your plea of guilty and could then impose a sentence that is more severe than you may be expecting." Plea Hr'g Tr. 5-7, Oct. 15, 2004. He noted that should the court reject the plea agreement, Lister would be provided with the opportunity to change his plea to not guilty. *Id.* at 7. Lister firmly acknowledged these possibilities. Additionally, Judge Shabaz addressed the holding in *United States v. Booker*, 375 F.3d 508 (7th Cir. July 9, 2004), and its effect on the Federal Sentencing Guidelines, noting that, at that time, the case had been argued before

the Supreme Court but that a final opinion had not yet been issued. Most importantly, Judge Shabaz explicitly stated that Lister's plea carried "penalties of a minimum mandatory term of five years and a maximum of 40 years in prison, a $2 million fine, a four-year period of supervised release and $100 special assessment." Plea Hr'g Tr. 9, Oct. 15, 2004. When asked if he understood this possible penalty, Lister stated simply "yes." *Id.*

Following the plea hearing, the U.S. Probation Office prepared a presentence investigation report (PSIR) for use at sentencing. When interviewed for the report in 2004, Lister recounted his criminal and personal past in a series of non-immunized statements. He admitted that approximately five years earlier he began producing cocaine base with the assistance of Torrence Sims. Lister purchased an ounce of powder cocaine on a weekly basis and Sims converted it to cocaine base. The result of this operation was that Lister distributed one and one- quarter ounces of cocaine base on a weekly basis for approximately one year. Using these statistics, the Probation Office calculated Lister's admitted cocaine distribution and concluded that Lister was responsible for distributing a minimum of 1.84 kilograms of cocaine base over the prior three years (1.25 ounces converts to 35.44 grams, and this amount multiplied by 52 (weeks) yields 1.84 kilograms).

Two other individuals interviewed for the PSIR, Derrick Gosha and Torrence Sims, attributed far greater amounts of cocaine base to Lister. Gosha was interviewed by Wisconsin state and municipal investigators on October 15 and 23, 2001, and later testified before a federal grand jury on June 4, 2003. He estimated purchasing nine to 14 ounces of cocaine base from Lister somewhere between 20 to 30 times from 1999 to July 2001. He also recounted making two larger transactions with Lister. In total, Gosha attributed 5.62 kilograms of cocaine base to Lister. Sims was interviewed by municipal investigators on November 8 and 27,

2001, and testified before a federal grand jury on July 16, 2003. He testified that he had been purchasing cocaine and cocaine base from Lister from about 2000 or 2001. His total attribution to Lister was 4.12 kilograms of cocaine base and an equal amount of cocaine.

The Probation Office also recounted Lister's personal and criminal history, which included four years of attendance at Beloit Memorial High School and a year of studies at Blackhawk Technical College in Janesville, Wisconsin. Lister also admitted to having a substance abuse problem, which began in his early teenage years and progressively worsened until his arrest in the instant matter. Regarding his criminal history, Lister's most notable offense was his 1998 conviction of possession of cocaine with intent to distribute.

Based upon Lister's admissions, his personal and criminal history, and the corroborating testimony, the Probation Office recommended that Lister be sentenced at an offense level of 35, assuming a three point reduction for his accepting responsibility for the crime. U.S.S.G. § 3E1.1. This point total was calculated using the 1.84 kilogram admission made by Lister. U.S.S.G. §§ 2D1.1, 1B1.3(a)(1)(A) and (B).

Lister's attorney, however, contested the chronology of the PSIR. He argued that the distribution of the additional quantity of cocaine base had actually taken place before 1998. Were this the case, the additional distributions would have occurred before his previous conviction for possession with intent to distribute and the district court would have been in error to punish him twice.

Relying primarily upon Lister's own admissions in his interview, the district court found that the chronology presented in the PSIR was reliable by a preponderance of the evidence. When finding that the relevant conduct had taken place after the 1998 conviction, Judge Shabaz noted that Lister had waived his constitutional rights during the

interview and that "the most reliable information is that which is attributed to the defendant in that statement." Sentencing Hr'g Tr. 13, Dec. 16, 2004. He reiterated that "[t]he Court has relied primarily on the defendant's statement to investigators in making the determination of reliable conduct which it considers in sentencing and [uses] the other witnesses to corroborate the facts that defendant was involved in drug dealing activities from at least January 2000 to January 7, 2002." *Id.* at 14. This finding on relevant conduct reaffirmed the offense level of 35.

Additionally, the district court held that the objections made by Lister's attorney were frivolous, and denied any reduction in the sentence for acceptance of responsibility. This finding came after a series of questions in line with this Court's decision in *United States v. Purchess*, 107 F.3d 1261 (7th Cir. 1997), when the district judge attempted to determine if Lister understood and adopted the challenges made by his attorney, Mr. Kelly:

> THE COURT: And are you in agreement with those challenges which have been made on your behalf?
>
> LISTER: Basically I rely on my lawyer for that, Your Honor.
>
> THE COURT: Then you don't agree with him, is that what you're saying?
>
> LISTER: Yeah. I basically just rely on him for it.
>
> THE COURT: Are you accepting the challenges as offered by your lawyer?
>
> LISTER: I basically just rely on him to just—
>
> THE COURT: Did he tell you that you should not accept his recommendations?
>
> MR. KELLY: Well, Your Honor, I'm not going to let my client answer a question that invades attorney-client privilege.

Sentencing Hr'g Tr. 2-3, Dec. 16, 2004. Following this exchange and judicial finding, Lister's offense level was elevated to 38. When paired with his Criminal History Category of IV, the Sentencing Table yielded a suggested guideline range of 324 to 405 months. U.S.S.G. § 5A.

Prior to imposing the sentence, the district judge stated that "the Court will impose a sentence consistent with the provisions set forth in 18 United States Code Section 3553(a). . . ." Sentencing Hr'g Tr. 12-13, Dec. 16, 2004. He then reviewed Lister's past and the immediate criminal offense. Specifically, Judge Shabaz noted the early start and progressive nature of Lister's drug use, his attempts to rehabilitate himself, his previous felony conviction, and the fact that Lister was on probation supervision at the time that the instant crime was committed. Judge Shabaz concluded this review by stating that Lister "has remained undeterred from participating in new criminal conduct." Sentencing Hr'g Tr. 12-13, Dec. 16, 2004.

Following this review the district court sentenced Lister in a two-step process. First, treating the Federal Sentencing Guidelines manual as advisory per our decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), Judge Shabaz initially considered sentencing Lister to 40 years, the maximum term contemplated under the plea agreement. Noting the reliability of the Federal Sentencing Guidelines, however, the district judge calculated a "suggested" term of 324 to 405 months. Based upon this calculation, Judge Shabaz imposed a term of 405 months, reasoning that the sentence would "achieve the societal interest of punishing and deterring the defendant as well as protecting the community." Sentencing Hr'g Tr. 15, Dec. 16, 2004. Moreover, he noted that "[t]his is probably the most significant amount of cocaine base that has been brought to this Court's attention for perhaps as long as it can recall and the Court does believe that a most significant sentence is necessary." *Id.* at 15. He then took the second step of

calculating an alternative sentence under the mandatory guidelines and again arrived at a term of 405 months.

The final judgment on Lister's case was entered on December 16, 2004, and he filed a timely notice of appeal on December 23, 2004.

Appellant now argues four points of error; points two and four merge. The resulting arguments are as follows: first, that the district court erred in denying credit for his acceptance of responsibility, second, that his sentence was unreasonable, and third, that the district judge's findings on relevant conduct violated his right to due process.

## II. Discussion

### A. Acceptance of Responsibility.

On appeal Lister primarily argues against the district court's finding that he failed to accept responsibility for his crimes, *see* U.S.S.G. § 3E1.1. This denial of credit, he argues, led to an erroneous application of the guidelines.

In seeking credit for accepting responsibility for his crimes, the defendant bears the burden of proving this acceptance by a preponderance of the evidence. *United States v. Travis*, 294 F.3d 837, 840 (7th Cir. 2002); *United States v. Ewing*, 129 F.3d 430, 435 (7th Cir. 1997). We review the district court's decision on this fact-based finding for clear error. *United States v. Hicks*, 368 F.3d 801, 808 (7th Cir. 2004); *United States v. Mayberry*, 272 F.3d 945, 948 (7th Cir. 2001). Normally, a defendant's plea of guilty is evidence of his having accepted responsibility. *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005) (citing application note to U.S.S.G. § 3E1.1). Furthermore, the application note to Sentencing Guideline 3E1.1 allows the defendant to "remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability

to obtain a reduction under this subsection." U.S.S.G. § 3E1.1, cmt. n.1(a). But where a defendant "falsely denies, or frivolously contests, relevant conduct that the court determines to be true" he may be found to have acted in a "manner inconsistent with acceptance of responsibility." *Id.*; *United States v. Purchess*, 107 F.3d 1261, 1264 n.1 (7th Cir. 1997); *United States v. Booker*, 248 F.3d 683, 689-91 (7th Cir. 2001) (holding defendant who pleaded guilty but challenged PSIR's findings on drug quantity was properly denied acceptance of responsibility (additionally, we note that this Booker is not the same Booker that successfully appealed his case to the Supreme Court in 2004)). For defendant to properly contest findings presented in a PSIR they need to do more than simply deny the information presented. *Purchess*, 107 F.3d at 1267-68 (citing *United States v. Taylor*, 72 F.3d 533, 547 (7th Cir. 1995)). Instead, they must present evidence. *See id.*

Furthermore, defendants may not circumvent this barrier by using their attorney to make the challenges. *Id.* at 1268-69. Frivolous challenges and denials made by one's attorney also place a deduction for acceptance of responsibility at risk. *Id.* at 1267-68. But this leap of responsibility between the attorney and the defendant must be carefully evaluated. In *Purchess*, we stated that where the defendant stays silent on relevant conduct, but his attorney challenges facts presented in the PSIR, it would be best for the court to determine whether the defendant understands and agrees with his attorney's argument before denying the reduction. *Id.* However, it is not the responsibility of the court to interrogate the defendant and elicit a response where he effectively avoids answering the question. The burden of proof regarding the acceptance of responsibility remains with the defendant.

At the sentencing hearing, Lister's attorney challenged the factual chronology contained within the PSIR. The Probation Office concluded that Lister was responsible for a

total of 1.84 kilograms of cocaine base distributed during one of the four prior years. This amount and subsequent finding was based on Lister's own admissions in his PSIR interview that was subsequently corroborated by Gosha and Sims. Lister's attorney argued that the greater amount had been distributed before his client's 1998 conviction. This argument was not supported by new information, but was a reinterpretation of the statements contained within the PSIR. In an effort to follow our guidelines set forth in *Purchess*, the district court repeatedly questioned Lister to determine if he understood and agreed with his attorney's objections to the PSIR chronology. In each response, however, Lister eschewed a simple answer for what may only be described as an attempt at legal hair-splitting, ultimately frustrating the court's determination. Judge Shabaz subsequently found that the PSIR chronology was reliable by a preponderance of the evidence and that Lister had frivolously contested the facts contained therein, thus denying him any credit for acceptance of responsibility.

While our decision in *Purchess* noted that the district judge should make an effort to determine the defendant's understanding of his attorney's challenges, we also made known our reluctance to add to the burdens of the district court at sentencing. *Purchess*, 103 F.3d at 1269. Furthermore, *Purchess* involved a defendant with a fifth-grade education and a limited command of the English language. *Id.* at 1268. In comparison, Lister attended four years of high school and studied business management at a technical college. His reluctance to answer in a straightforward manner at trial may be more readily attributed to conscious choice rather than incomprehension. Under these circumstances, we cannot say that the district court committed clear error when it found that Lister had not accepted responsibility for his crimes.

**B.  Review of the sentence for unreasonableness.**

Lister also challenges the overall length of his term as erroneously calculated and unreasonable. In *United States v. Booker*, the Supreme Court held that the Federal Sentencing Guidelines were no longer mandatory and that all sentences must be reviewed for "unreasonableness." 125 S.Ct. 738, 765-67 (2005). District courts are aided in their determination of reasonableness via a mandatory examination of the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 764-65, 67; *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1045 (7th Cir. 2005). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In determining the specific term, § 3553(a) advises that the sentence should "reflect the seriousness of the offense," "provide just punishment," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C). Additionally, this court has held that "any sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

At the outset of this reasonableness review, Lister briefly challenges the accuracy of the district court's calculation of his advisory sentence range. He argues that the incorporation of his relevant conduct into his total offense level was in error. But *Booker* and its predecessor cases did not limit such judicial factfinding in the sentencing context. *United States v. Bryant*, 420 F.3d 651, 656 (7th Cir. 2005). Instead, they held that a Sixth Amendment problem arises where the sentence exceeds the statutory maximum of the charged crime or where the term is imposed under a mandatory sentencing scheme. *Booker*, 125 S.Ct. at 750; *see United States v. Dean*, 414 F.3d 725, 729-30 (7th Cir. 2005). Neither of these concerns are present upon review of Lister's sentencing. The district court calculated the

appropriate range of 324-405 months based upon his guilty plea, relevant conduct, and criminal history. The district court then reviewed the § 3553(a) factors to choose a discretionary sentence within that range.

But Lister argues that the district court's sentence failed to adequately consider the factors set forth in § 3553(a). As noted above, *Booker* does command such a review. *Booker*, 125 S.Ct. at 764-65, 67. This Court, however, has held that a point-by-point analysis of each factor listed in § 3553(a) is not necessary to meet the *Booker* requirement. *Dean*, 414 F.3d at 729. "Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005). Furthermore, § 3553(a) may be met where the district judge offers an "adequate statement" of his reasoning that a particular sentence is appropriate for the defendant. *Dean*, 414 F.3d at 729. The district court's sentencing procedure met these requirements.

In choosing a sentence within the 324-405 month range, the district judge explicitly considered § 3553(a). Judge Shabaz reviewed Lister's history with drugs and attempts at rehabilitation, his criminal history, and the overall quantity of cocaine base he had admitted distributing. Moreover, he announced that Lister's term would "achieve the societal interest of punishing and deterring the defendant as well as protecting the community." Sentencing Hr'g Tr. 15, Dec. 16, 2004. In light of these statements, we cannot agree that the § 3553(a) factors were not adequately considered. *See Rodriguez-Alvarez*, 425 F.3d at 1046-47 (holding that § 3553(a) factors were properly considered where district judge commented on defendant's criminal history and likelihood of recidivism before finding a "severe sentence" was warranted).

To complete our review of the district court's actions at sentencing we note that Judge Shabaz paired his guideline calculation with an effective review of § 3553(a) to arrive at Lister's "suggested" 405 month sentence. The district court did not consider the term mandatory and attempted to anticipate the future of the sentencing guidelines as well as possible. *See George*, 403 F.3d at 472. It was only in the alternative that Judge Shabaz offered a mandatory term of 405 months. *See Bryant*, 420 F.3d at 654-56; *Booker*, 375 F.3d at 515. Because this sentence was based on an adequate consideration of the § 3553(a) factors, we cannot say that it is unreasonable. We take this opportunity, however, to respectfully remind the district court that 1.84 kilograms of cocaine base is a moderate quantity compared to those higher amounts contemplated by 21 U.S.C. § 841. Yet, in comparison, the 405 month sentence nearly reaches the statutory maximum. Such a term leaves little room for the proportional sentencing that motivated Congress to pass the sentencing guidelines, a motivation recognized and supported by the Supreme Court's second holding of *Booker*. *Booker*, 125 S.Ct. at 767-68 (citing U.S.S.G. § 1A1.1 application note.)

Because of the district court's discretionary ruling and mandatory alternative, there is no question that Judge Shabaz would impose the same sentence had he known the Supreme Court's full holding in *Booker*. Therefore, there is no need for a *Paladino* remand. *See United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

While our established review for unreasonableness may have come to an end, Lister's challenges do not. He contends that *Booker* and its predecessors charge this court with the responsibility to avoid unwarranted sentencing disparities between co-defendants, and between controlled substances where Congress has specifically legislated

differing, advisory, punishments. We note only briefly that the judiciary has no power to maintain charges against an individual where the United States Attorney exercises its executive discretion and chooses to dismiss them, as was the case here. This is not a matter of the "sentencing disparities" as considered by *Booker*, but instead an example of the separation of powers in our legal system. *United States v. Jones*, 438 F.2d 461, 467-68 (7th Cir. 1971) (citing *Goldberg v. Hoffman*, 225 F.2d 463, 464-65 (7th Cir. 1955)). Regarding the different punishment recommended for cocaine base and cocaine, this Court has previously upheld the ratio differential codified in 21 U.S.C. § 841. *See United States v. Lawrence*, 951 F.2d 751 (7th Cir. 1991). The Supreme Court's holdings in *Booker* do nothing to overturn this decision. *See Booker*, 125 S.Ct. at 756-69. *Booker* rendered the sentencing guidelines advisory; it did not strike them down in their entirety. *Id*.

**C. Due Process Consideration.**

Lastly, Lister argues that the district court's finding on relevant conduct violated his right to due process because it was predicated on the unreliable testimony of Gosha and Sims. We begin by noting that "a defendant has a due process right to be sentenced on the basis of accurate information." *United States v. Townsend*, 73 F.3d 747, 751 (7th Cir. 1996). This right is generally satisfied when the facts in question are found by a preponderance of the evidence using information that has a "sufficient indicia of reliability to support its probable accuracy." *Id*. at 751-52 (citing *United States v. Salinas*, 62 F.3d 855, 859 (7th Cir. 1995)); *United States v. Ewers*, 54 F.3d 419, 421 (7th Cir. 1995) (internal quotation marks omitted). We review a district court's findings of fact regarding the quantity of drugs considered as relevant conduct for clear error. *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir. 1994).

Contrary to Lister's contention, the district court based its finding of relevant conduct primarily on the admission of Lister himself. The district judge weighed the facts as presented in Lister's PSIR statement against his attorney's unsupported argument at the sentencing hearing and found the contested relevant conduct by a preponderance of the evidence. In this evidentiary evaluation, the district court reviewed and compared Lister's specific statements regarding dates, relevant transactions, monies paid, and the delegation of manufacturing duties. While Lister may have facially challenged the PSIR's chronology, he offered no evidence to counter the quantity calculations and he chose not to disavow his prior statements. Furthermore, these statements made during his PSIR interview were non-immunized and against his own interest. When presented with such a challenge, we cannot say that the district court committed clear error in its findings of fact. *See United States v. Mustread*, 42 F.3d 1097, 1101-02 (7th Cir. 1994) (holding defendant may not simply deny the PSIR's truth, but must produce some evidence that calls the reliability or correctness of the alleged facts into question (citing *United States v. Isirov*, 986 F.2d 183, 185 (7th Cir. 1993) (internal quotation marks omitted))). Therefore, Lister's due process claim must fail.

AFFIRMED.

No. 04-4304                                                          15

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*