**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 3, 2006
Decided October 30, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

Nos.  05-1958, 05-1960, 05-1968

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 04 CR 162 |
| TYRAY ROBERSON, STEPHEN E. BLACK, and MONCLAIR HENDERSON-EL, *Defendants-Appellants.* | John C. Shabaz, *Judge.* |

**O R D E R**

Stephen Black, Monclair Henderson-El, and Tyray Roberson were caught dealing crack out of their shared apartment.  Black and Roberson both pleaded guilty to distributing cocaine base, while Henderson-El pleaded guilty to possession of cocaine base with intent to distribute.  *See* 21 U.S.C. § 841(a)(1).  The district court calculated the guidelines imprisonment range for each defendant based on the entire amount of crack recovered from the apartment during the execution of a search warrant.  In these consolidated appeals, Roberson and Black challenge the reasonableness of their prison terms, while Henderson-El's appointed counsel moves to withdraw under *Anders v. California,* 386 U.S. 738 (1967).  We affirm

Roberson's and Black's sentences, allow appointed counsel for Henderson-El to withdraw, and dismiss Henderson-El's appeal.

## I.

An undercover police officer in Madison, Wisconsin, bought crack from Black three times during August and September of 2004.  Black sold the officer 9.66 grams the first time, 26.46 grams the second, and 123.35 grams the third.  Each time surveillance officers watched Black leave an apartment leased to Henderson-El before he met with the undercover officer.  During the first and third transactions, officers observed Black driving a car registered to Henderson-El.  Officers also saw Roberson conduct "counter-surveillance activities" prior to the third buy.

On September 30, 2004, the same day as the third undercover buy, officers executed a search warrant at the apartment.  During the search officers handcuffed Henderson-El and sat him at a table near the kitchen with DEA Special Agent Craig Grywalsky.  After receiving *Miranda* warnings, Henderson-El said that he did not want to answer questions until he had spoken to an attorney.  Grywalsky then heard an officer in the kitchen wonder aloud if there were keys for an unlocked safe found in the storage drawer of the oven.  Grywalksy noticed a safe key on the table in front of him, picked it up, and said, "Here's some keys."  Henderson-El then stated, "Those are my keys."  The safe contained 383.9 grams of crack.  Officers also found 1,032.4 grams of crack in Henderson-El's bedroom, 480.4 grams of crack in Roberson's bedroom, and an additional 61.3 grams of crack in a common area.  In total, the officers found just over 1.7 kilograms of crack and $7,530 in currency in the apartment.

A grand jury returned a four-count indictment charging that Black distributed cocaine base on August 26 and September 9, 2004 (Counts 1 & 2), that Black and Roberson distributed cocaine base on September 30, 2004 (Count 3), and that all three defendants jointly possessed the cocaine base in the apartment on September 30 with intent to distribute (Count 4).  Henderson-El filed a motion to suppress his statement regarding the safe key, which the district court denied.

All three defendants entered plea agreements.  Black pleaded guilty to Count 1 and Roberson to Count 3.  Henderson-El entered a conditional guilty plea to Count 4, preserving his right to challenge on appeal the denial of his motion to suppress.  At sentencing the district court found that the three men were working jointly to distribute crack and attributed just under 1.9 kilograms to each.  That total represents the amount of crack recovered during the undercover buys and apartment search.  The court selected a base level of 38—which applies to offenses

involving 1.5 kilograms or more of crack, *see* U.S.S.G. § 2D1.1(c)—and, after individual computations for acceptance of responsibility and criminal history, calculated imprisonment ranges of 168 to 210 months for Black, 188 to 235 months for Roberson, and 210 to 262 months for Henderson-El.  The court sentenced each defendant within his applicable imprisonment range: Black to 180 months, Roberson to 194, and Henderson-El to 210.

## II.

### A.    Black and Roberson

Black and Roberson together argue that their prison sentences are unreasonably high because the district court did not go below the range to account for the differential between sentences for powder cocaine versus crack.  But in *United States v. Miller*, 450 F.3d 270 (7th Cir. 2006), we held that sentencing judges are required to abide by the 100:1 crack-to-powder ratio when applying the Sentencing Guidelines to a defendant's conduct.  *Id.* at 275-76.  We are not alone in this conclusion.  *See United States v. Williams*, 456 F.3d 1353, 1367 (11th Cir. 2006); *United States v. Pho*, 433 F.3d 53, 63-64 (1st Cir. 2006); *United States v. Eura*, 440 F.3d 625, 633-34 (4th Cir. 2006).  The 100:1 ratio exists in the guidelines by legislative decision, and "the judiciary is not free to replace Congress's approach with one it deems superior." *Miller*, 450 F.3d at 275.  Accordingly, Black and Roberson's argument is barred.  *See United States v. Hankton*, 463 F.3d 626.629 (7th Cir. 2006) (noting that *Miller* forecloses reasonableness arguments based on differential in sentences between crack and powder cocaine).

Roberson raises one additional, meritless argument.  He argues that the rebuttable presumption of reasonableness adopted in *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), for sentences within the guidelines range cannot be reconciled with the advisory character of the guidelines established in *United States v. Booker*, 543 U.S. 220 (2005).  This court rejected the same contention in *Mykytiuk*.  415 F.3d at 607 ("[W]hile a *per se* or conclusively presumed reasonablenss test would undo the Supreme Court's merits analysis in *Booker*, a clean slate that ignores the proper Guidelines range would be inconsistent with the remedial opinion."); *see Hankton*,463 F.3d at 630 n.5 (dismissing as "ridiculous" the argument that applying *Mykytiuk*'s rebuttable presumption renders guidelines mandatory); *United States v. Williams*, 436 F.3d 767, 769 (7th Cir. 2006) (recognizing that *Mykytiuk* avoids conflict with *Booker*).

Black alone argues that it was error to attribute to him as relevant conduct all of the crack found in the apartment.  A defendant involved with others in a drug offense is accountable for all reasonably foreseeable drug quantities within the

scope of the jointly undertaken activity.  *See* U.S.S.G. § 1B1.3, cmt. n.2; *United States v. Sliman*, 449 F.3d 797, 801 (7th Cir. 2006).  Black concedes that he engaged in joint activity with Roberson and Henderson-El; he argues, however, that he could not reasonably have foreseen the amount of crack found in the apartment.  This is so, says Black, because the evidence shows only that he acted as a courier for the drug sales and does not establish that he was closely tied to his codefendants.  He insists that he was at most an occasional visitor to the apartment—his bedroom was furnished only with an air mattress—who did not know about the drugs that were stored there.  Black also asserts that the district court gave too much weight to his 1999 arrest with Henderson-El for an unrelated offense, and wrongly stated that Roberson was arrested with them.  Finally, he states that the district court should not have referenced Roberson's and Henderson's 1996 joint arrest for disorderly conduct or the fact that all three had attended the same high school, because that evidence was not in the record.  Black's argument is meritless.

Drug quantity is a factual finding that the government must establish by a preponderance of the evidence, *see United States v. Lister*, 432 F.3d 754, 762-63 (7th Cir. 2005); *United States v. Breland*, 356 F.3d 787, 795 (7th Cir. 2004), and which we review only for clear error, *United States v. Hawk*, 434 F.3d 959, 962 (7th Cir. 2006).  The evidence showed that Black was staying at the apartment at least periodically, that he had his own bedroom there, and that crack and thousands of dollars in currency were found in readily accessible common areas of the apartment.  The evidence also showed that on three occasions within a four-week period Black sold crack to the same undercover officer just after leaving the apartment, and the amount of crack that Black sold the undercover officer increased with each sale.  His three sales to this single "customer" totaled 159 grams—very large transactions in the crack trade.  *See United States v. Wash*, 231 F.3d 366, 371 (7th Cir. 2000) (characterizing 3.5 and 5.4 grams of crack as "distribution amounts").  Moreover, the apartment search was executed on the same day as the third buy.  Accordingly, it was not clear error for the court to conclude not only that Black knew that an ample supply of crack was available at the apartment, but that he had access to it.

Black's argument that the district court mischaracterized the codefendants' past relationship is overstated.  Black does not assert that they *did not* attend the same high school, and he did not object at sentencing when the court referenced that fact or Roberson's and Henderson's prior joint arrest.  While Roberson was not involved in Black's 1999 arrest with Henderson-El, the district court's error is completely harmless given the evidence of Black's role in the crack distribution operation.

**B.     Henderson-El**

Henderson-El filed a response to counsel's *Anders* motion, *see* Cir. R. 51(b), asserting that he believes the federal judiciary lacks jurisdiction over him because the probation officer referred to his race as "black" whereas he self-identifies as "Moorish-American."  This argument can be dismissed out-of-hand, so we turn to the *Anders* brief, which is facially adequate.  *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Counsel first considers whether Henderson-El might argue that the district court erred by refusing to suppress his statement regarding the safe key.  In particular, counsel suggests that Henderson-El might raise the theory that Agent Grywalksy was deliberately trying to elicit information from him after he invoked his right to counsel when the agent said, "Here's some keys."  The government conceded that Henderson-El was in custody when he took ownership of the keys to the safe, so only the question of interrogation was at issue.  "Interrogation" in this context means words or actions "that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *see United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002).  We review *de novo* a legal determination that a statement is voluntary, giving deference to any determinations of "historical" facts.  *United States v. Gillaum*, 372 F.3d 848, 855 (7th Cir. 2004), *cert. denied*, 534 U.S. 969 (2004).

Counsel is correct that it would be frivolous to challenge the suppression ruling.  Before the district court ruled, a magistrate judge conducted an evidentiary hearing at which Agent Grywalksy testified that he did not know that the keys belonged to Henderson-El when he reached for them, that he never asked Henderson-El if he had keys to the safe, and that he was addressing and looking at another officer when he said, "Here's some keys."  The district court adopted the magistrate judge's findings that Grywalsky's statement did not constitute an interrogation and that Henderson-El volunteered his connection to the keys. Deferring as we must to the district court's findings of the circumstances surrounding Henderson-El's statement, there is no basis for us to conclude that Henderson-El's statements were anything other than volunteered.  *See, e.g., Arizona v. Mauro*, 481 U.S. 520, 529 (1987) (stating that statements are volunteered where not the result of "compelling influences, psychological ploys, or direct questioning"); *Abdulla*, 294 F.3d at 835 (concluding statements volunteered when not in response to any question posed by agents).

Counsel also considers whether Henderson-El might argue that the government breached paragraph 10 of the parties' plea agreement by supporting the probation officer's recommended crack quantity of 1.9 kilograms.  That paragraph provides: "The defendant agrees that the United States can prove beyond a reasonable doubt that the defendant's total offense conduct involved at least 500

but less than 1.5 kilograms of cocaine base." As is evident from this language, Henderson-El's agreement that the government could prove just shy of 1.5 kilograms beyond a reasonable doubt in no way foreclosed the government from trying to prove *more* over Henderson-El's objection. Indeed, during the plea colloquy the prosecutor represented that the amount of crack referenced in the plea agreement was "a floor," and that the government anticipated that the district court "may well find that it is above 1.5." Accordingly, counsel is correct that this potential argument would be frivolous.

Counsel next questions whether Henderson-El could argue that his guilty plea was involuntary because he did not understand what amount of cocaine base he was admitting to having possessed. Counsel notes that during the plea colloquy Henderson-El stated, "The only thing I know of is the 534 grams." Counsel has not indicated, however, that Henderson-El wants his plea set aside, and Henderson-El makes no such suggestion in his Rule 51(b) response. Thus, counsel should not have addressed this potential issue in her *Anders* brief. *See United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002). We note, however, that the district court substantially complied with Fed. R. Crim. P. 11(b) in taking the plea, so a challenge to the plea would be frivolous. *See* Fed. R. Crim. P. 11(h); *United States v. Dominguez-Benitez*, 542 U.S. 74, 80 (2004); *Schuh*, 289 F.3d at 975.

Counsel next considers whether Henderson-El might argue—as does Black—that the district court erred in attributing to him as relevant conduct the entire 1.9 kilograms of crack. The argument is meritless as to Black, and utterly frivolous as to Henderson-El. Henderson-El was the leasee on the apartment, and 1,032 grams of the total crack were found in his bedroom. He also admitted ownership of a key to the safe that contained another 383.9 grams of crack. On two occasions Black drove Henderson-El's car to sell crack to the undercover officer. Without doubt his jointly undertaken activity extended to the entire crack quantity.

Finally, counsel suggests that Henderson-El might argue that the district court erred by applying the guideline for crack since the laboratory report identifies the drugs only as "cocaine base." *See United States v. Edwards*, 397 F.3d 570, 571, 576 (7th Cir. 2005) (noting that not all cocaine base is crack). Henderson-El originally objected to the probation officer's characterization of the substance as "crack," but he withdrew that objection when the government came to sentencing poised to call two experts who would testify that the cocaine base was, in fact, crack. Accordingly, Henderson-El waived this potential issue, which would preclude review of the potential argument that counsel identifies. *See United States v. Cunningham*, 405 F.3d 497, 501 (7th Cir. 2005); *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000).

We AFFIRM Black's and Roberson's sentences, GRANT the *Anders* motion, and DISMISS Henderson-El's appeal.