NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2010
Decided August 26, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-1613

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 08-CR-134 |
| JOHNNY HAYES, *Defendant-Appellant.* | Rudolph T. Randa, *Judge.* |

**O R D E R**

Johnny Hayes, along with co-defendant Derrick Powe, *see United States v. Powe*, No. 09-2758 (7th Cir. Aug. 3, 2010), committed four bank robberies, making off with more than half a million dollars. He confessed and pleaded guilty to four counts of armed bank robbery, 18 U.S.C. § 2113(a), (d)(2), and a count of brandishing a firearm during a crime of violence, *id.* § 924(c)(1)(A)(ii). The court agreed with the parties that the appropriate guidelines range was 135 to 168 months' imprisonment, plus an additional 84 months for his conviction for brandishing a firearm. The district court sentenced him to a within-guidelines sentence of 240 months' imprisonment. On appeal, Hayes does not challenge his plea, conviction, or the guidelines calculations. Instead, he contests only the factual validity of a single statement the district court made at sentencing about the robbery's impact on the racial attitudes of some bank employees.

After the government recommended a total imprisonment term of 240 months, five victims testified, describing in various ways how they continued to feel victimized long after the robberies ended. Bank teller Diane Smith described how the robbery sowed distrust among co-workers at the bank; another employee, Courtney Ceballos-Navarrete, recounted that she now reflexively assumes that any hooded black male (Hayes is black) portends trouble. The PSR also recounts that an unnamed victim stated that after the incident, she had a negative reaction when she had to interact with a person of color.

Before imposing the sentence, the district court observed that Hayes's bank robberies were serious crimes. The "nature and circumstances of this offense are almost as egregious as any I have seen, except for those where people were pistol whipped or shots were fired around the bank." The court also viewed Hayes as a typical criminal, describing him as similar to "all criminals and people who have criminal orientation. They don't have to follow the rules. Any time they think they want to, or need to, they can just pop off and do what they think they're entitled to. And that's what I see here."

The court then addressed the impact of the crime on the bank employees by fostering distrust and souring race relations:

> And some said here—I don't know—Miss Navarrete said that, you know, they took everything from us. And that's—she said she has feelings. She doesn't know why she has these feelings. Or someone said that. But I know why that is. It's post-traumatic stress disorder. And I was in Vietnam. . . .
>
>    But when you're in a bank, in a pleasant environment—as people said, you know, they had a group. Nice family knit group. Diane Smith said everybody was honkey-dory [sic]. And it changed everything with the relationships. It even affected racial relations with some of them. Someone was accused in the bank or suspected of being an inside—on the inside of these jobs. You know, when this little bit of evil touches you, it has a tendency to spread. And that's hard on people who aren't used to it. But that is just another emphasis on why the nature and circumstances of the offense is a serious one.

The court then imposed a sentence of 240 months.

On appeal, Hayes contends that his sentencing was procedurally flawed because the district court clearly and erroneously attributed to Smith the complaint that the robbery fostered racial distrust. (He does not argue that the complaint itself was an illegitimate sentencing consideration.) Hayes correctly observes that Smith testified only about

workplace distrust generally, without regard to race.  Hayes concludes that the court's injection of "additional and incorrectly perceived racial turmoil into that circumstance takes the aggravation to a different and heightened level."

When reviewing a criminal sentence, we must determine that no significant procedural error occurred, such as selecting a sentence based on clearly erroneous facts, as Hayes argues here.  *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Anderson*, 604 F.3d 997, 1003 (7th Cir. 2010).  A defendant has a due process right to be sentenced on the basis of accurate information.  *United States v. Mays*, 593 F.3d 603, 608 (7th Cir.), *cert. denied*, 130 S.Ct. 3340 (2010); *United States v. Lister*, 432 F.3d 754, 762 (7th Cir. 2005).  Accordingly, that right is violated if the district court relied on clearly erroneous facts to determine the sentence.  *United States v. Hankton*, 432 F.3d 779, 790 (7th Cir. 2005); *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir. 1992).

But Hayes has not shown that the district court's factual statement about race relations was wrong, much less clearly erroneous.  The court said only that the robbery affected race relations among "some" workers, which is supported by the statements of both Ceballos-Navarrete and the unnamed employee in the PSR.  Moreover, the court did not attribute the statement about race relations to Smith or say that she was among the "some" who saw race relations deteriorate.  And even if the court did wrongly attribute that statement to Smith instead of Ceballos-Navarrete, Hayes cannot show what difference it made whether Ceballos-Navarrete or Smith made the statement.  *See United States v. Soto*, 48 F.3d 1415, 1422 (7th Cir. 1995) (holding that district court's minor misstatement of record was not plain error).

We also note that though the court was only summarizing the testimony it heard, a sentencing court should take care to avoid inadvertently creating the impression that the racial attitudes of the victims may have influenced the sentence.  This is particularly true here, where neither the government nor the defendant raised at sentencing the issue of race and the other circumstances of case readily justify the sentence.  While Congress has mandated that crime victims be given the opportunity to speak at sentencing, *see* 18 U.S.C. § 3771(a)(4), a court should confine its sentencing rationale, as we are satisfied the court ultimately did here, to the factors set forth in 18 U.S.C. § 3553(a), as framed by the parties.  The district court made evident here that the within-guidelines sentence was easily justified by the defendant's repeated bank robberies of more than a half-million dollars.

AFFIRMED.