In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2080

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SCOTT L. GORDON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin
No. 05-CR-0139—**Barbara B. Crabb**, *Chief Judge.*

ARGUED OCTOBER 19, 2006—DECIDED JULY 23, 2007

Before RIPPLE, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Through a complex series of transactions, Scott Gordon embezzled between $117,000 and $189,000 from his former employer, Anchorbank, beginning in June 1995 and ending when he left the bank's employ (voluntarily) in May 2003. Anchorbank first uncovered parts of the scheme in September 2003, and initiated a detailed six-month investigation into Gordon's activities. The bank documented its investigation and the amount of loss in hundreds of pages of documents, receipts, and ledgers tracing the fraudulent transactions. As one example of fraud, the government's witness described a scheme in which Gordon would target a certifi-

cate account that had been closed legitimately and assessed an early withdrawal penalty. Then, using a high level security access, Gordon would reopen the certificate and then re-close it without the penalty, leaving a remaining balance from which he embezzled funds.

By March 30, 2004, Anchorbank had documented approximately $134,883.44 in losses. In 2004, as part of the investigation, two FBI agents visited Gordon's home in St. Paul. Gordon immediately confessed to his crime and provided the FBI with a letter to that effect. Shortly thereafter, Gordon's counsel sent a letter to the FBI on Gordon's behalf expressing Gordon's desire to accept responsibility for his crime. Gordon also took out a home equity loan to secure the funds to reimburse the bank for its losses, and signed an agreement turning over to the bank the $50,000 he had accumulated in his retirement accounts. By June 9, 2004, the bank had discovered an additional fraudulent loan in the amount of $54,000, and accordingly, the government adjusted the loss amount to $188,883.44. On September 15, 2005, the government filed a one count information charging Gordon with embezzling in excess of $117,000 in violation of 18 U.S.C. § 656. Gordon entered a guilty plea on November 8, 2005.

Gordon cooperated with investigators from the pretrial services office who arrived at a total offense level calculation of fifteen, including a recommended two-level reduction for acceptance of responsibility. Coupled with Gordon's criminal history category of I, his guideline imprisonment range was eighteen to twenty-four months.

On December 28, 2005, Gordon filed a written objection to the presentence investigation report in which he raised three key objections: first, that the bank had inadvertently double counted some funds thus inflating the loss amount; second, that the district court should have used the 1997 sentencing guidelines; and third, that

he should not have received a two-level enhancement under U.S.S.G. § 3B1.3 for those who abuse a position of trust. Gordon filed two subsequent motions arguing in the first that, pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005), he was entitled to have a sentencing jury determine the loss amount and whether he held a position of trust, and, in the second, requesting that the court hold a hearing to determine the correct amount of loss.

In an addendum dated January 5, 2006, pretrial services stood by its original conclusions. A few days later, Gordon moved for a continuance and asked the court to issue a subpoena requiring Anchorbank to turn over more documents.

On March 17, 2006, pretrial services issued a second addendum lowering the loss figure from $188,883.44 to $168,735.85 based on Gordon's report of double counting, with which Anchorbank agreed. Despite these changes, Gordon filed an amended sentencing statement renewing the same objections he had made before, including additional arguments relating to the loss amount.

Gordon appeared for his sentencing hearing on March 28, 2006, and reiterated his objections to the loss calculation of $168,735, noting that he had found what he referred to as minor discrepancies amounting to between $5,000 and $6,000. In response, the government, after consulting with Anchorbank's representative, agreed to forgo $6000 of restitution in an effort to resolve the loss issue and proceed with sentencing without a hearing on the loss amount. Gordon conferred with his lawyer and rejected the government's offer, claiming that he was "just very concerned that because of the amounts here and the shifting sands, that even if they did go through this whole accounting, that it's going to change again." (Tr. 3/28/06 at11). The district court then rescheduled the sentencing hearing for April 5, 2006.

At that hearing, Anchorbank's representative described the investigation and introduced the hundreds of pages of documents it had accumulated detailing the embezzlement scheme. Gordon testified that he wished to "take full responsibility for what I've done" but that he was concerned about the amounts and making certain that he was "responsible for the correct amount," and "sentenced appropriately according to the correct amount." (Tr. 3/28/06 at 37). Gordon also testified that he had reviewed the Anchorbank documents daily for a year and half and had found several errors. Specifically, he documented one error amounting to $2,552.73, another amounting to $272.80, and a third amounting to $2173.12. (Tr. 4/5/06 at 42-44). He also testified that he found discrepancies between the debits and credits listed in the Anchorbank documentation, and between the numbers of "cases" of theft reported in the government's recap and those Gordon found by going through the box of documents. (*Id.* at 39-45). In closing, Gordon's counsel argued that the government had not met its burden of proving by a preponderance of the evidence that Anchorbank had lost anything more than the $117,000 to which Gordon pled.

At the close of evidence, the district court denied Gordon's request for a sentencing jury, and concluded that the government had proved, by a preponderance of the evidence, that the relevant conduct resulted in an actual loss of $168,735.85. After expressing concern about Gordon's challenges to minor discrepancies in the accounting, the district court denied Gordon a reduction in offense level for acceptance of responsibility, and sentenced him to twenty-seven months' imprisonment.[1] Gordon appeals

---

[1] The district court also determined that Gordon abused a position of trust and that the 2002 Sentencing Guidelines apply,
(continued...)

first, the district court's refusal to empanel a jury to determine the amount of loss and whether he held a position of trust, and second, the district court's decision not to reduce Gordon's sentencing range for acceptance of responsibility.

## I.

Gordon believes that pursuant to the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), he is entitled to have a sentencing jury determine first, the correct amount of loss, and second, whether Gordon held a position of trust for which he could receive an additional enhancement under U.S.S.G. § 3B1.3 (2002).[2] Gordon is not the first, nor will he be the last to argue unsuccessfully that *Booker* demands that any fact that enhances a sentence must be proven to a jury beyond a reasonable doubt. The guidelines, however, are advisory and not mandatory and therefore the presence or absence of a particular fact will determine only where within the guidelines a sentence falls, but will not necessarily determine the actual sentence. *United States v. Dean*, 414 F.3d 725, 730 (2005). If the factual determinations require a particular sentence, or result in a sentence exceeding the statutory maximum, then a jury must find those facts beyond a reasonable doubt. *United States v. Bryant*, 420 F.3d 652, 656 (7th Cir. 2005); *Dean*, 414 F.3d at 730. Sentencing factors that do not increase a sentence beyond the statutory maximum need not be proven to a jury

---

[1]  (...continued)
although Gordon does not challenge either of these holdings on appeal.

[2]  All references to the U.S. Sentencing Guidelines Manual are to the 2002 edition used at sentencing.

beyond a reasonable doubt—a proposition we have repeated numerous times explicitly and implicitly since the decision in *Booker*. *See, e.g., United States v. James*, No. 05-3070, 2007 WL 1583994 at *9 (7th Cir. June 4, 2007); *U.S. v. Swanson*, 483 F.3d 509, 514-15 (7th Cir. 2007); *U.S. v. McCaffrey*, 437 F.3d 684, 689 (7th Cir. 2006); *U.S. v. Owens,* 441 F.3d 486, 490 (7th Cir. 2006); *U.S. v. Robinson,* 435 F.3d 699, 701 (7th Cir. 2006); *United States v. White*, 472 F.3d 458, 464 (7th Cir. 2006); *Bryant*, 420 F.3d at 656; *Dean*, 414 F.3d at 730; *U.S. v. LaShay,* 417 F.3d 715, 719 (7th Cir. 2005). Gordon was not entitled to have the amount of loss or his role in a position of trust proven to a jury beyond a reasonable doubt.

Before the district court, Gordon objected not only to the choice of fact-finder for the loss calculation, but also to the amount of loss the government presented. Gordon never offered a concrete counter-proposal, arguing instead that the burden was on the government to prove the amount of loss, and objecting in a general fashion to the fact that the government's loss calculations had changed repeatedly. *See* (Tr. 4/5/06 at 37) ("There's been so much change. And in going through all the documentation that I've been presented with, a number if things did not make sense to me, and so my concern grew. And I'm just concerned that [sic] the correct amount I'm held responsible for."). *See also* (Tr. 3/28/06 at 11) ("[h]e's just very concerned that because of the amounts here and the shifting sands, that even if they did go through this whole accounting, that it's going to change again."). The court, however, expressed "grave doubt" about whether Gordon had accepted responsibility in light of the "nitpicking over Anchor's inability to find every penny that he manipulated." (Tr. 4/5/06 at 61-63). Consequently, the district court declined to give Gordon any reduction for acceptance of responsibility. (Tr. 4/5/06 at 75).

This court reviews the sentencing court's acceptance of responsibility determination for clear error. *United States v. Davis*, 442 F.3d 1003, 1009 (7th Cir. 2006). In doing so, we give great deference to the district court's assessment of whether a defendant has accepted responsibility. *United States v. Hicks*, 368 F.3d 801, 808 (7th Cir. 2004). A district court judge, face to face with a defendant, can listen to his voice, watch his actions, and better assess credibility and genuineness. *See United States v. Williams*, 202 F.3d 959, 961-62 (7th Cir. 2000). It was this type of assessment that led Judge Crabb to determine that Gordon had not accepted responsibility, noting, "I heard him on the stand, and that's what worries me. I heard somebody who doesn't want to pay out a penny. He really doesn't want to." (Tr. 4/5/06 at 64).

A defendant who enters a guilty plea prior to trial is not entitled to an adjustment for acceptance as a matter of right. U.S.S.G. § 3E1.1 cmt. n.3. The burden rests on the defendant to demonstrate entitlement to the reduction. *United States v. Akindele*, 84 F.3d 948, 956 (7th Cir. 1996). A defendant who falsely denies, or frivolously contests, relevant conduct in the face of convincing evidence to the contrary does not merit a reduction in sentence for acceptance of responsibility. *U.S. v. Romero*, 469 F.3d 1139, 1149 (7th Cir. 2006); *U.S. v. Zehm*, 217 F.3d 506, 515-16 (7th Cir. 2000); U.S.S.G. § 3E1.1, cmt. n.1(a). Although a sentencing court cannot condition a defendant's reduction for acceptance of responsibility on his admission of details related to crimes other than the offense of conviction, a sentencing court can require that the defendant provide a "candid and full unraveling" of the methods used by the defendant to commit his crime. *U.S. v. Larkin*, 171 F.3d 556, 558 (7th Cir. 1999). In this case, the district court correctly determined that Gordon had frivolously contested the amount of loss and had not been completely candid with the court.

The government presented more than sufficient and convincing evidence of its loss calculation in the form of hundreds of pages of documents tracing Gordon's many and complex thefts. It took the victim bank six months of continuous work to compile the research of the crime. A court need only make a reasonable estimate of the loss, not one rendered with scientific precision. *United States v. Swanson*, 483 F.3d 509, 513 (7th Cir. 2007); U.S.S.G. § 2B1.1 cmt. n.2(C). The district court correctly pronounced this theme noting that, "[a]ll the government has to prove is a reliable, reasonable estimate of what was taken; and this accounting has gone far beyond anything that I've ever seen before." (Tr. 4/5/60 at 66). The district court judge is in the best position to assess the evidence and estimate the loss based on that evidence and thus this court must defer to the district court's determination of loss—and of course, its determination that the government has met its burden of providing a reasonable estimate of loss. U.S.S.G. § 2B1.1 app. n.2(C).

Gordon's non-specific objections to the loss amount in the face of overwhelming evidence can be nothing other than frivolous. Although the burden is on the government to determine the amount of loss, once the government has met its burden of proving loss, the defendant's wholly unsubstantiated statements are not enough to counter or even question the court's acceptance of the government's proof of loss. *United States v. Swanson*, 394 F.3d 520, 527 (7th Cir. 2005). Despite the government's overwhelming display of evidence of loss, other than the evidence of double-counting that the government subsequently corrected, Gordon's sole complaint is a generalized concern that the government may not have been right. (Tr. 4/5/06 at 37). That concern stems from the fluctuations that occurred as the bank studied the records and zeroed in on the amount of loss. Gordon's counsel's description of the loss amount as a "moving target" (Tr. 4/5/06 at

61) or a "sequence here of revision after revision," (*id.* at 57), however, far overstates the amount of change. The bank first estimated $134,883.44 in loss.[3] Three months later, after discovering yet one more fraudulent loan, the government raised that number to $188,883.44. The government altered its loss amount a second time—in Gordon's favor—after accepting his allegation of a few instances of double counting. Two revisions, in the course of investigating five years of fraudulent activity involving approximately eighty-nine cases of fraud, does not consti-

---

[3] The information in this case charged Gordon with embezzling *in excess of* $117,000, but neither the government nor the victim bank ever asserted a loss amount of exactly or approximately $117,000. The bank's security officer testified as follows:

> Q:   Now, the first number that you provided to the government was $117,000; is that right?
>
> A:   I've heard that number raised, but I don't have anything that shows that number.

At oral argument, the U.S. Attorney explained that he had a conversation with counsel in which he noted that he could not use the language "approximately $117,000" as opposed to "in excess of $117,000," in the information because the bank had informed the U.S. Attorney's office that the number was higher than $117,000. (oral argument at 13min:25sec-14min:12sec). According to the government, the $117,000 was the lowest number to which the parties could agree at the time, but both the government and the defendant's counsel understood that the bank was asserting a greater loss. *Id.* The U.S. Attorney stated at oral argument that this conversation was memorialized in a letter to the court below. *Id.* That letter could not be located in the record, but in any case, the language of the information and the bank security officer's testimony both reveal that, from the get-go, the loss amount was *in excess of* $117,000 and not approximately $117,000. Consequently, the loss amount was revised only two times (from $134,883 to $188,883 and then from $188,883 to $168,735).

tute a "moving target." Furthermore, Gordon's gut feeling that the government may not have gotten it right is far afield from the type of substantiated evidence that a defendant must present to counter the government's explicit proof of loss. *See United States v. Swanson*, 394 F.3d 520, 527 (7th Cir. 2005); *United States v. Sensmeir*, 361 F.3d 982, 989 (7th Cir. 2004); *United States v. Newman*, 144 F.3d 531, 543 (7th Cir. 1998). A defendant must do more than simply deny the findings presented in a presentence investigation report; he must present evidence. *U.S. v. Lister*, 432 F.3d 754, 760 (7th Cir. 2005).

As the district court pointed out, "Mr. Gordon can make his embezzlement as complex as possible. That doesn't shift the burden to the government to do a perfect accounting of everything that Mr. Gordon embezzled . . . . when you create the mess, you can't blame the person left to clean it up for not doing it as perfectly as you would have wanted that person to do." (Tr. 4/5/06 at 62, 74). In fact, Gordon himself stated that he reviewed the documents daily for a year-and-half. If neither the victim bank, after six months of review, nor the embezzler himself, after a year-and-a-half review, were able to decipher the precise amount, then further precision is unlikely, and the government has presented as close to a perfect accounting as is possible in this case.

Of course a court cannot deny a reduction for acceptance of responsibility when a defendant makes a good faith challenge to a calculation of loss or drug quantity or the like. *United States v. Eschman*, 227 F.3d 886, 891 (7th Cir. 2000). In *Eschman*, the defendant objected to the district court's method of calculating drug quantity. The appellate court noted that Eschman "had good reason" to challenge the calculation as the district court had erred in relying on faulty methodology when determining the drug quantity. *Id.* at 890-91. Ample evidence supports the district

court's determination that Gordon's objections, unlike Eschman's, were not in good faith. A defendant acting in good faith would have identified any errors, provided a full and candid unraveling to the best of his ability, and then accepted the loss amount calculated using the information he provided. In this case, the defendant identified several instances of double-counting which the bank readily corrected. He also identified between $5,000 and $6,000 worth of errors. Yet when the government offered to reduce the loss amount by $6,000 (without even viewing Gordon's proof of the errors) in order to avoid a hearing on the amount of loss, Gordon dug in his heels and insisted on a hearing based on a generalized "concern[ ] that because of the amounts here and the shifting sands." (Tr. 3/28/06 at 11). The district court was well within its right to determine that this was not the action of a defendant ready to accept responsibility. We cannot ignore, furthermore, the fact that the defendant is quibbling about an amount that would place him just below the guidelines cut-off for crimes involving more than $120,000. *See* U.S.S.G. § 2B1.1(b).

At oral argument Gordon asserted that the Western District of Wisconsin, as a matter of course, would deny acceptance of responsibility to any defendant who challenged a loss amount. Were that assertion correct, we would be troubled, of course, that a court might have a per se rule of denying acceptance of responsibility any time a defendant challenges a loss amount. In this case, however, there is ample evidence that Gordon frivolously contested the amount. A court that denies acceptance of responsibility to a defendant who frivolously contests relevant conduct is following both the Guidelines and the clear authority from this circuit. U.S.S.G. § 3E1.1, cmt. n.1(a). *Lister*, 432 F.3d at 759-60; *Romero*, 469 F.3d at 1149; *U.S. v. Leahy*, 464 F.3d 773, 791-92 (7th Cir. 2006); *U.S. v. Sharp*, 436 F.3d 730, 735 (7th Cir. 2006); *U.S. v.*

*Berthiaume,* 233 F.3d 1000, 1004 (7th Cir. 2000); *Zehm*, 217 F.3d at 516. The district court did not err by finding that Gordon did not qualify for a reduced sentence for acceptance of responsibility.

The decision of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*