In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1387

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONG JIN CHEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 801—**Ronald A. Guzmán**, *Judge.*

ARGUED DECEMBER 4, 2006—DECIDED AUGUST 14, 2007

Before EASTERBROOK, *Chief Judge*, and CUDAHY and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Dong Jin Chen pleaded guilty to eleven counts of extortion and one count of tax fraud based on an extensive money lending scheme he ran in Chicago's Chinatown community. Chen operated numerous gambling parlors and provided loans to patrons and other individuals at rates as high as 5% to 10% interest per week. When the borrowers could not meet these inflated terms, Chen would then show up with various associates and Toi Ching gang members to forcibly demand payment. For these activities Chen was sentenced to 220 months, just above the bottom (210 months) of an advisory guidelines sentence range that included both a bodily

injury and a leader/organizer enhancement. The district court also denied Chen an acceptance-of-responsibility adjustment for falsely denying or frivolously contesting his threats or use of violence in the course of his acts of extortion. Chen appeals these sentencing enhancements and the denied adjustment. We affirm.

## I.  Background

Chen has been a U.S. citizen for ten years and has lived in the United States since 1985, but he speaks a rare Chinese dialect from his native region. As a result, the district court supplied an interpreter for Chen at all plea and sentencing hearings, and Chen repeatedly assured the court that he was able to understand the proceedings with the interpreter's assistance. After Chen entered his guilty pleas to the extortion and tax fraud counts, his counsel filed an objection to certain guidelines enhancements recommended in the presentence report. Specifically, Chen challenged the bodily injury enhancement denying he had repeatedly threatened and engaged in the violent conduct described in the presentence report, ranging from slaps and scrapes to beatings with metal pipes and wooden bats. Instead, he asserted he had only relied on "implicit threats"—his known reputation in the community for resorting to violence against those who failed to pay—to intimidate people into paying him back. Chen also argued that the extortion scheme was not broad enough to warrant a four-point organizer/leader enhancement, which requires either a minimum of five participants or "otherwise extensive" criminal activity.

Based on Chen's objections to the presentence report, the government went forward with a two-day sentencing hearing during which it presented numerous witnesses who testified to both observing and being on the receiving end of Chen's violent tactics. Three individuals testified to

being slapped, punched, and scraped by Chen or associates acting under his direction. An FBI agent also presented evidence regarding a beating Chen and four other individuals inflicted on Ging Hong using a metal pipe, a handgun, and a baseball bat; Hong suffered injuries including a head laceration that required nine stitches. Based on this largely uncontroverted evidence, the district court concluded that Chen had caused bodily injury and been the leader of criminal activity both extensive in nature and involving at least five participants. The court also denied Chen any reduction for acceptance of responsibility due to his denial of the violent conduct. The court then imposed a sentence of 220 months' imprisonment.

## II.  Discussion

### A.  Acceptance of Responsibility

A district court's denial of an acceptance-of-responsibility reduction on grounds that the defendant denied relevant conduct is a factual finding subject to review for clear error. *United States v. Gilbertson*, 435 F.3d 790, 798 (7th Cir. 2006). Here, the district court concluded that Chen "failed to truthfully admit the conduct he engaged in, the beatings, the direct threats, the use of a dangerous weapon." *See* U.S.S.G. § 3E1.1 cmt. n.1(a) (acceptance-of-responsibility reduction may be denied to "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true"); *see also United States v. Gordon,* No. 06-2080, 2007 WL 2077564, at *4 (7th Cir. July 23, 2007) ("A defendant who falsely denies, or frivolously contests, relevant conduct in the face of convincing evidence to the contrary does not merit a reduction in sentence for acceptance of responsibility.").

Chen does not, and cannot, dispute that he contested the facts recited in the presentence report about his use

of violence in the extortion scheme. The sentencing memorandum filed by his counsel explicitly denies, no less than three times, that Chen ever resorted to violence or threats of violence. A lengthy evidentiary hearing was held as a result of this challenge to the presentence report. Chen now argues that these denials were made solely by his counsel and cannot fairly be attributed to him based on his inability to understand English and his limited education.

In support of this argument, Chen cites *United States v. Purchess*, in which this court stated, "[W]here the defendant had a fifth grade education and a limited command of the English language, and where the record contains no link between the attorney's statements and the defendant, we are reluctant to attribute the attorney's statements to the defendant." 107 F.3d 1261, 1268 (7th Cir. 1997). However, the facts of *Purchess* are easily distinguishable from this case. First, Chen had an interpreter present at every stage of the proceedings and repeatedly assured the district court that he understood what was occurring. Chen also testified that he had eleven years of education. Further, during his guilty plea hearing, Chen (through his translator) made the same protest as his counsel—that he had not threatened violence or physically harmed anyone in the course of collecting loans.[1] Thus, unlike in *Purchess*, the record here demonstrates that Chen was able to understand and communicate with his attorney about the proceedings. Accordingly, we conclude

---

[1] After brief consultation with his attorney, Chen changed his position and admitted that he had used threats of violence, as required to plead guilty to extortion. This exchange demonstrates that Chen was able to understand and respond to the court's direct questioning, and was able to communicate with his counsel about his acceptance of responsibility.

that the district court properly attributed the denials of violent conduct to Chen.[2]

We also have no trouble concluding that the district court did not err in finding that Chen's denials of this violent conduct were false. At the sentencing hearing, the government presented numerous witnesses who testified both to witnessing and being victims of Chen's violence. On appeal Chen concedes his participation in the Ging Hong beating, one of the incidents cited in support of the bodily injury enhancement. Based on Chen's false denial of this and other violence for which there was ample evidence, the district court did not err in denying the acceptance-of-responsibility reduction.

## B. Organizer/Leader Enhancement

Chen next challenges the application of the four-point organizer/leader enhancement, a factual finding that we review for clear error. *See United States v. Blaylock*, 413 F.3d 616, 618 (7th Cir. 2005). A four-point enhancement may be applied "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1. The district court concluded both that the extortion scheme involved five or more participants and that it

---

[2] *United States v. Purchess* suggested that the district court's "best course" when a defendant remains silent while his attorney mounts a factual challenge to relevant conduct is to directly question the defendant to ensure that he understands and agrees with the challenge. 107 F.3d 1261, 1269 (7th Cir. 1997). We endorse this as a sound practice. Here, however, the record establishes—even without a direct colloquy by the court—that Chen understood the proceedings, and the denial of violent conduct was appropriately attributed to him for purposes of denying the acceptance of responsibility adjustment.

was otherwise extensive "in that it involved large amounts of money, it involved a large number of victims, it involved a significant number of participants, it involved record keeping and daily activity, all calculated to make a profit by means of extortion." Chen does not deny that he was an organizer or leader, but he challenges the district court's findings regarding the extent of the organization.

The commentary to the sentencing guidelines states that a "'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1. Chen admits that codefendants Qi Ming Weng and Yu Hua Chen were involved in the extortion scheme but argues that other named individuals and unidentified gang members whom witnesses testified assisted Chen were not "criminally responsible." The government presented unrebutted testimony to the contrary, including evidence that Zhou Mei, Peter Lai, and numerous members of the Toi Ching gang participated with Chen in "debt collection" incidents in which people were threatened or actually physically harmed. Peter Lai also admitted to the FBI that he, Zhou Mei, and two other individuals participated in the beating of Ging Hong. Based on this uncontested evidence, the district court did not err in concluding that Chen's criminal activity involved five or more participants.

Although we need not reach the question given our conclusion that the activity involved five or more participants, the court also did not err in concluding that the criminal activity was "otherwise extensive." The government presented a ledger indicating that approximately 150 people owed Chen a total of about $380,000. Chen regularly relied upon the assistance of both the named coconspirators and various unidentified Toi Ching gang members, indicating that more than five individuals were involved in the criminal activity. *See* U.S.S.G. § 3B1.1

cmt. n.3 ("In assessing whether an organization is 'otherwise extensive,' *all persons involved during the course of the entire offense are to be considered.* Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." (emphasis added)); *see also United States v. Tai*, 41 F.3d 1170, 1174 (7th Cir. 1994) ("otherwise extensive" requires involvement of more than five individuals). Accordingly, there is ample evidence in the record to support the district court's findings regarding the extensive nature of the extortion scheme.

### C. Bodily Injury Enhancement

Chen's final challenge is to the two-point bodily injury enhancement applied under U.S.S.G. § 2E2.1(b)(2)(A). "'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. n.1(B). He contends that the slaps and scrapes certain witnesses testified to were not sufficiently serious to constitute bodily injury as defined by the sentencing guidelines. The district court made no specific findings of fact regarding which injuries or incidents it considered in support of the enhancement; instead, the court more generally concluded that "it is absolutely crystal clear that the defendant engaged not only in implicit threatening behavior but in explicit threats and in actual violence personally, through others, and with and without dangerous weapons." Admittedly, this level of generality makes it more difficult to review whether the injuries that led to the application of the enhancement qualify as "bodily injury" under the guidelines. However, as discussed above, Chen conceded both in his brief and at oral argument before this court that the beating of Ging Hong was sufficiently severe to require

nine stitches to Hong's head. That incident was encompassed in one of the superceding indictment counts for which the bodily injury enhancement was proposed, and it was testified to at the sentencing hearing. Accordingly, based on the Ging Hong incident alone, the district court did not err in applying the bodily injury enhancement, making the severity of the slaps and scrapes to other individuals irrelevant.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*