NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2009
Decided January 13, 2010

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 09-1928

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:08-CR-30014-01-DRH |
| ANTAWON CHAIRS, *Defendant-Appellant.* | David R. Herndon, *Chief Judge.* |

**O R D E R**

On the morning of his trial date, Antawon Chairs pleaded guilty to one count of felony possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and one count of possessing an unregistered firearm, *see* 26 U.S.C. §§ 5841, 5861(d), 5871. At sentencing the district court denied Chairs a two-level reduction for acceptance of responsibility based on his last-minute guilty plea and his lack of sincere remorse. *See* U.S.S.G. § 3E1.1. Chairs was sentenced to a prison term of 147 months. On appeal Chairs claims that the district court erroneously denied him a sentencing reduction. We affirm.

On October 9, 2007, local law enforcement in East St. Louis, Illinois, spotted Chairs driving with a sawed-off shotgun in his hands and followed him. Distracted while fumbling with the gun, Chairs crashed into a utility pole, accidentally discharging the

shotgun. The pursuing officers then arrested him. Because Chairs previously had been convicted of a drug-related felony, he was charged with being a felon in possession of an unregistered firearm.

In a videotaped statement given the day after his arrest, Chairs described how and why he came to possess the shotgun. Earlier on the evening of his arrest, he and other family members responded to a call from his fifteen-year old cousin, who was involved in a fight with several other teenagers at a nearby public housing project. After the fight broke up, and as Chairs and the rest of the family were leaving the scene, a man named "Red" threatened them and opened fire on their three vehicles as they pulled away. Chairs was incensed because his young son had been in one of the cars Red targeted. After taking his son home, Chairs drove to a friend's house and picked up the sawed-off shotgun along with five additional shells. Chairs said that he intended to return to the housing project only to "scare" Red, but when he could not find him, Chairs fired shots into the air and left. Statements from two 911 callers that the government intended to offer as evidence at trial, however, reported that someone shot *at* the apartment building. In the taped statement, Chairs admitted knowing it was illegal for him to possess a shotgun because of his previous felony conviction, but he nonetheless went ahead with his plan to scare Red because he figured it would be his first gun charge.

In the months leading up to his eventual guilty plea, the district court granted Chairs numerous continuances as well as two motions to appoint new counsel, resulting in the trial date being pushed back eight months to November 2008. On the morning of trial, the court granted the government's motion to allow the videotaped statement into evidence, and the court also stated it was inclined to grant the government's motion in limine to prevent Chairs from introducing evidence of inadequate investigation as part of his defense. After those rulings and as the jury was on its way to the courtroom, Chairs made his third pro se motion for new counsel, citing, among other complaints, his attorney's refusal to move to dismiss the case based on what Chairs considered a Speedy Trial Act violation. The court denied this motion, admonishing Chairs for trying to "game the system." The court explained that it would not allow Chairs to keep postponing the proceedings only to allege that he was wronged by the delay.

Only after the judge informed Chairs that the trial would proceed that day as scheduled did Chairs decide to plead guilty to both counts. As the government described the foundational facts for the plea, however, Chairs objected to the government's assertion that it could prove he knew the barrel of the shotgun was less than eighteen inches, a necessary element of the charge for possession of an unregistered firearm. Once the court explained that the government would have to prove only constructive knowledge, Chairs agreed to plead guilty.

A probation officer prepared a presentence report in which he recommended a two-level reduction for acceptance of responsibility because Chairs admitted his involvement in the offense and entered a guilty plea before trial. *See* U.S.S.G. § 3E1.1. But at sentencing the district court rejected this recommendation, noting that Chairs waited until the morning of trial to change his plea, and that even then continued to dispute his knowledge of an element of the crime. The court also expressed concern that Chairs admitted to "making a mistake," but had never shown any real remorse or recognition of the seriousness of his offenses. The court found it particularly troubling that the only victims Chairs could identify were the members of his family who, Chairs argued, would suffer during his absence while in prison. The court noted that Chairs did not recognize how the residents of the housing project were also victims of his shooting and that this type of violent crime endangers the community.

The district court calculated a total offense level of 30 and a criminal history category of IV, resulting in a guidelines range of 135 to 168 months. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court sentenced Chairs to 147 months' imprisonment. The court explained that while, initially, it was inclined to give Chairs a sentence at the high end of the range because of his lengthy criminal history and the seriousness of his current and past offenses, it decided on a mid-range sentence because of Chairs's recent efforts at rehabilitation and because the court gave him credit for four months for a discharged sentence, *see* U.S.S.G. §§ 5G1.3, 5K2.23.

On appeal Chairs challenges only the district court's denial of a two-level acceptance of responsibility reduction under § 3E1.1. A district court's factual determination regarding acceptance of responsibility is reviewed for clear error and its finding will be reversed only if there is no foundation for the judge's decision. *United States v. Leahy*, 464 F.3d 773, 790 (7th Cir. 2006). Great deference is given because the trial judge is in the best position to evaluate the sincerity of a defendant's remorse and contrition. *Id*.

Although a guilty plea in conjunction with complete and truthful admission of the offense conduct is typically viewed as significant evidence of acceptance of responsibility, an admission alone does not entitle a defendant to the reduction automatically. *See* U.S.S.G. § 3E1.1, cmt. n. 3; *United States v. Gordon*, 495 F.3d 427, 431 (7th Cir. 2007). A judge "must look beyond formalistic expressions of culpability and determine whether the defendant has manifested an acceptance of responsibility for his offense in a *moral sense*." *United States v. Fiore*, 178 F.3d 917, 925 (7th Cir. 1999) (emphasis added). An expression of sincere remorse includes a defendant's recognition of how his criminal conduct has hurt others. *See United States v. Ewing*, 129 F.3d 430, 436 (7th Cir. 1997) (affirming denial of reduction where defendant did not demonstrate until sentencing understanding of how his actions affected

victims); *United States v. Panadero*, 7 F.3d 691, 694 (7th Cir. 1993) (affirming denial of reduction where district court found defendant did not understand harm caused by her "Ponzi" scheme).

The district court here properly determined that Chairs did not demonstrate an awareness of the inappropriateness of his actions or show sincere remorse for what he did. Chairs argues that the packet of poems, letters, and drawings he submitted to the district court at sentencing were evidence of his sincere remorse, his repentance, and his efforts to rehabilitate himself by embracing religion. The court noted, however, that even though Chairs acknowledged he should have called the police instead of arming himself, his representations at his sentencing hearing demonstrated that he did not perceive the seriousness of his taking matters into his own hands. The court also noted that Chairs refused to recognize that his actions could have escalated an already violent conflict or that he could have hurt innocent bystanders when he fired the shotgun at the housing project. Based on these findings, the district court did not clearly err in denying the reduction.

Moreover, Chairs's last-minute plea alone was a sufficient basis for the district court to deny an acceptance-of-responsibility reduction. A judge may determine that a reduction under § 3E1.1 is not warranted when a defendant waits until the eleventh hour to enter a plea. *United States v. Rosalez-Cortez*, 19 F.3d 1210, 1219 (7th Cir. 1993). This court consistently has affirmed a denial of such a reduction in cases where the defendant waited until the final days before trial to enter a guilty plea. *See, e.g., United States v. Wallace*, 280 F.3d 781, 786 (7th Cir. 2002) (affirming denial of reduction when defendant did not plead guilty until after jurors empaneled); *United States v. Sierra*, 188 F.3d 798, 805 (7th Cir. 1999) (plea entered last business day before trial); *United States v. Francis*, 39 F.3d 803, 808 (7th Cir. 1994) (plea entered one week before trial). A last-minute plea thwarts the main purpose of § 3E1.1, which is to avoid wasting governmental and judicial resources preparing for trials that never happen. *See United States v. Tolson*, 988 F.2d 1494, 1499 (7th Cir. 1993). Such tactics also suggest that the defendant is holding out for a better deal rather than accepting responsibility from the outset. *Tolson*, 982 F.2d at 1499.

Chairs argues that his admission of involvement in the offense and his guilty plea before trial are significant evidence of acceptance of responsibility. But Chairs's eleventh-hour plea required the government and the district court to expend resources preparing for trial, thus undermining the central purpose of the reduction. Although Chairs stated that he always intended to plead guilty, his intent alone, even if expressed, would not be enough to allow the government to abandon its preparations for trial. Furthermore, the fact that Chairs waited until after the district court ruled against him on two motions in limine makes his claims of honest acceptance of responsibility even more incredible because it appears that Chairs pleaded guilty only after he knew his chances of success at trial were

low.  Given the circumstances of his plea in conjunction with his other attempts to delay the proceedings, the district court did not clearly err in denying a reduction for acceptance of responsibility.

AFFIRMED.