In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3596

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FARSHAD GHIASSI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:11-cr-00029-RLY-WGH-1 — **Richard L. Young**, *Chief Judge.*

ARGUED APRIL 2, 2013 — DECIDED AUGUST 30, 2013

Before ROVNER, WILLIAMS, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Farshad Ghiassi pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court ordered him to serve a prison term of 70 months. Ghiassi appeals his sentence, contending that the district court erred as a matter of fact in finding him responsible for eight or more firearms and deprived him of due process by relying, in substantial part, on

his co-defendant's testimony at her sentencing to make that finding. Finding no error, we affirm.

**I.**

In February and early March of 2011, Alicia Wiseman purchased a total of eight handguns at outdoor-gear retail stores in southern Indiana: six of them she acquired from a Gander Mountain store in Evansville, Indiana, and the other two she purchased at a Bass Pro Shops in Clarksville, Indiana. Chad Foreman, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), looked into those purchases. When Foreman interviewed Wiseman on March 21, 2011, she told him that she had purchased the guns for Ghiassi. Ghiassi was prohibited from possessing firearms on two grounds: he had prior felony convictions for stalking and taking another person's vehicle without the owner's consent, and he was also the subject of a protective order which prohibited him from possessing a firearm. Wiseman indicated to Foreman that Ghiassi would shop for the type of handgun he wanted, and he would then advise Wiseman of his choice. Wiseman in turn would buy the gun on his behalf, and in connection with each purchase complete an ATF Form 4473 in which she falsely averred that she would be the individual possessing the firearm. Following the purchase, she would deliver the gun to Ghiassi at his apartment, on the understanding that he would reimburse her for it.

Upon Wiseman's additional disclosure that Ghiassi had an AK-47 assault rifle that he wished to sell, Foreman arranged to make an undercover purchase of that weapon. Wiseman, who agreed to cooperate, advised Ghiassi by text message that she had a friend who was interested in buying the gun; Ghiassi in

turn instructed Wiseman to have her friend call him. Foreman did so, and arranged by phone to purchase the gun for $550. Foreman was to meet Ghiassi in the parking lot of an Evansville movie theater on March 23, 2011.

At the scheduled place and time, Ghiassi arrived at his meeting with Foreman in a Subaru automobile driven by Chad Gamblin. Ghiassi sold the assault rifle to Foreman as agreed for $550. After Ghiassi turned the weapon over to Foreman, both he and Gamblin were taken into custody. A subsequent search of the trunk of the Subaru produced multiple weapons that had been purchased by Wiseman.

In a post-arrest interview, Ghiassi admitted that Wiseman had illegally purchased weapons on his behalf at both Gander Mountain in Evansville and at Bass Pro Shops in Clarksville. Ghiassi apparently did not, however, acknowledge any particular number of weapons that Wiseman had purchased for him. Separately, Gamblin disclosed that he had taken possession of Ghiassi's weapons approximately one week earlier.

Foreman subsequently reviewed camera surveillance footage from the Bass Pro Shops in Clarksville. In footage corresponding to a date on which Wiseman said she had purchased a firearm for Ghiassi, Ghiassi could be seen at the firearms counter looking over guns with Wiseman. Ghiassi then left the counter, at which point Wiseman completed the requisite paperwork and purchased a firearm.

A grand jury indicted both Foreman and Wiseman on a variety of gun-related charges. Ghiassi was charged with conspiring with Wiseman to provide false information in

connection with the sale of a firearm and to possess a firearm following a felony conviction, in violation of 18 U.S.C. § 371; possession of a firearm following a felony conviction, in violation of § 922(g)(1); and possession of a firearm following a conviction for a misdemeanor crime of domestic violence, § 922(g)(9). Wiseman was charged with, in addition to conspiracy, multiple counts of knowingly making false statements in connection with the sale of a firearm, in violation of 18 U.S.C. § 922(a)(6).

Ghiassi and Wiseman both pleaded guilty. Wiseman pleaded guilty to Count Six of the indictment, one of the false information charges. She was ultimately sentenced to three years' probation. Ghiassi opted to plead guilty to Count Two, the felon-in-possession charge. There was no plea agreement between Ghiassi and the government.

Ghiassi appeared before the court to change his plea on May 29, 2012. Things proceeded smoothly until Ghiassi voiced disagreement with the government's proffer of the evidence it would present if the case were to go to trial. During that proffer, Special Agent Foreman had testified, *inter alia*, that: (1) Wiseman admitted that she had purchased eight firearms at two different locations on Ghiassi's behalf; (2) he (Foreman) had purchased an AK-47 rifle from Ghiassi; and (3) a total of nine guns had been seized from Ghiassi's possession during the course of the ATF's investigation, including the AK-47 that Ghiassi sold to Foreman, seven guns that were recovered from the trunk of Gamblin's Subaru, and another handgun that was found in Ghiassi's bed, beneath his pillow. Ghiassi acknowledged responsibility for the AK-47, the weapon which underlay the felon-in-possession charge to which he was pleading

guilty, but he disputed the notion that Wiseman had purchased eight other weapons on his behalf. He contended that Wiseman had only purchased one gun for him, which he kept, and that he "had nothing to do with … the other weapons." R. 70 at 29. The court pointed out that Wiseman was scheduled for sentencing later that same day, and that Ghiassi's statement as to the number of guns Wiseman had purchased for him was at odds with her own account, as set forth in the probation department's pre-sentence report ("PSR") for Wiseman. In view of the conflict, the court postponed its decision whether to accept Ghiassi's plea and added that it would question Wiseman further about the number of guns she had purchased for Ghiassi at her sentencing. The court adjourned the plea proceeding to a later date, but ordered the probation department to prepare a pre-sentence report for Ghiassi in the meantime.

On November 2, 2012, the court convened what turned out to be both a continued change-of-plea hearing as well as a sentencing hearing. The court engaged Ghiassi in a fresh change-of-plea colloquy, during which Special Agent Foreman once again outlined the evidence that the government would present if Ghiassi were to proceed to trial. Foreman recounted, in some detail, the evidence he had gathered during the ATF's investigation, including his purchase of the AK-47 from Ghiassi as well as Wiseman's statement that she had purchased a total of eight handguns on Ghiassi's behalf in February and early March of 2011 and that she had subsequently delivered the guns to Ghiassi's apartment and was reimbursed for them. Foreman added that during his own post-arrest interview, Ghiassi admitted that Wiseman had purchased handguns for

him at both Gander Mountain in Evansville and Bass Pro Shops in Clarksville. Foreman also recounted for the court his review of the surveillance recording from Bass Pro Shops, which showed Ghiassi and Wiseman looking at guns, Ghiassi leaving the gun counter, and then Wiseman completing the paperwork and making a gun purchase. After asking Foreman to confirm that Ghiassi had acknowledged Wiseman's purchase of multiple firearms for him at both Gander Mountain and Bass Pro Shops, the district court then asked Ghiassi whether that was true. Ghiassi again denied that Wiseman had purchased eight handguns on his behalf, and that he had possessed those guns. He acknowledged that Wiseman had brought the guns to him so that he could clean and paint the engraving on them for her, but contended they were not his guns. Most of those guns, he said, he and Wiseman later gave to Gamblin, so that he could sell them on her behalf. Ghiassi ultimately admitted that, in addition to the AK-47 (which he had purchased himself), he had possessed two additional guns (including the one found underneath his pillow), for a total of three. But he denied that Wiseman had purchased for him, and that he possessed, as many as eight guns. In that respect, Ghiassi insisted, Wiseman was lying.

There being no question at this juncture that Ghiassi admitted the conduct underlying Count Two of the indictment—possession of the AK-47 that he sold to Foreman—the district court accepted Ghiassi's guilty plea. The dispute as to the number of additional guns that he possessed was a matter that the court resolved when it turned to the task of sentencing Ghiassi.

The district court made a factual determination that Ghiassi had obtained a total of eight guns through Wiseman. In making that finding, the court relied in part upon Foreman's summary of both Ghiassi's post-arrest admission that Wiseman had purchased multiple guns for him at Gander Mountain and Bass Pro Shops and Gamblin's post-arrest statement that Ghiassi had given him multiple guns for safekeeping approximately one week prior to their arrest. R. 69 at 65. But the court relied principally on Wiseman's statement, at her own sentencing hearing, that she had purchased a total of eight guns on Ghiassi's behalf; and the court expressly found Wiseman a more credible witness on this point than Ghiassi:

> So I either have to believe Mr. Ghiassi and find that Ms. Wiseman, Special Agent Foreman, and Mr. Gamblin are lying. I choose not to do that. I've had trouble with Mr. Ghiassi's credibility not only last time we tried to take a plea but today, as well. So in terms of credibility here, I'm giving great weight to the credibility of defendant Wiseman. She really has no reason to lie.
>
> Mr. Ghiassi admits here today that he sold the AK-47 because he needed money. Certainly, it would be consistent that he would have Ms. Wiseman purchase guns for him so that he could sell those at a profit, as well. He was actually caught on film at Bass Pro Shops with Ms. Wiseman at the gun counter, so it gives great credibility to her version of the event, which in response to my question:
>
> Q    How many guns did you end up buying?

A    There was a total of eight.

Q    Okay, when you bought these guns, then did you give them to Mr. Ghiassi?

A    Yes.

Q    Did he pay you for those?

A    He bought three to four of them. The others, he said he would promise to pay back, and he never did.

R. 69 at 65-66.

The court's decision to credit Wiseman's testimony as to the number of guns she purchased for Ghiassi triggered an increase in his offense level. One of the specific offense characteristics identified by the unlawful firearms possession guideline is, of course, the number of firearms involved in the offense. § 2K2.1(b)(1). That total includes not only the specific gun or guns which the defendant was convicted of possessing, but any firearm the possession of which qualifies as relevant conduct–which would include guns possessed pursuant to the same course of conduct as the offense of conviction. § 1B1.3(a)(2); *see, e.g., United States v. LePage*, 477 F.3d 485, 490-91 (7th Cir. 2007). For offenses involving 8 to 24 firearms, the guideline calls for a four-level increase to the defendant's base offense level. § 2K2.1(b)(1)(B). The district court's finding that Wiseman purchased eight weapons on Ghiassi's behalf, and that he possessed those weapons in addition to the AK-47 that he sold to Agent Foreman, brought to nine the total number of firearms for which Ghiassi was responsible, triggering the four-level enhancement. R. 69 at 66. Had the court credited

Ghiassi's testimony that he only possessed a total of three firearms, there would have been a more modest two-level enhancement to his offense level. *See* § 2K2.1(b)(1)(A).

The court's finding that Ghiassi was not credible had a second effect on the determination of his offense level. Ghiassi's decision to plead guilty, provided it reflected a genuine acceptance of responsibility for his offense, presumptively entitled him to a two-level decrease in his offense level pursuant to § 3E1.1(a). Moreover, at the outset of the change-of–plea process, the government signaled its intent to ask the court to grant Ghiassi an extra one-level reduction in his offense level in recognition of his timely declaration of his wish to plead guilty. *See* § 3E.1.1(b). But after Ghiassi gave what the district court found to be false testimony regarding the number of guns that he possessed, the court denied him the standard two-level credit for acceptance of responsibility pursuant to § 3E1.1(a), which of course rendered any question of an additional reduction moot, *see* § 3E1.1(b): "And I'm not going to find acceptance here because the story of Mr. Ghiassi regarding his involvement just doesn't ring true to me in view of the other testimony presented." R. 69 at 66; *see* § 3E1.1, comment. (n.1(A)). Ghiassi's offense level thus was not decreased by three levels as he had expected.

Ghiassi's final offense level was 26, which in conjunction with a criminal history category of II resulted in an advisory sentencing range of 70 to 87 months. Had the court instead credited Ghiassi's representation that he only possessed a total of three firearms, and had it granted Ghiassi the maximum credit for acceptance of responsibility, his offense level would have been 21, and the advisory sentencing range would have

been 41 to 51 months. The court's finding that Ghiassi was not credible as to the number of guns, and in turn was not genuinely accepting responsibility for his offense, consequently had a pronounced effect on his sentence.

## II.

Given the impact that the district court's determination as to the number of guns he possessed had on his sentencing range, Ghiassi's appeal naturally focuses on the validity of that finding. He challenges both the evidentiary basis for the court's finding as well as the fairness of the process that the court followed in making that finding.

Ghiassi contends first that the evidence does not support the district court's finding that he ultimately possessed nine firearms: "A total of nine (9) firearms were recovered during the course of the investigation and there was no evidence, other than a statement of a convicted co-defendant[,] that the Defendant ever possessed, intended to possess or in any way was involved with all nine (9) firearms." Ghiassi Br. 8. As Ghiassi acknowledges, a preponderance of the evidence is the quantum of proof necessary to support the district court's findings as to specific offense characteristics. *E.g.*, *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). Our review of the district court's factual finding as to the number of firearms involved in the offense is for clear error. 18 U.S.C. § 3742(e); *e.g.*, *United States v. Grigsby*, 692 F.3d 778, 787-88 (7th Cir. 2012).

The court had before it ample evidence that Ghiassi possessed eight or more guns, thus supporting the four-level enhancement under § 2K2.1(b)(1)(B). The court was presented with statements (both in and out of court) from multiple

witnesses on this point, it explored the subject conscientiously, and ultimately decided that Ghiassi was not credible. Certainly there was no clear error in the court's finding.

The fact that no government witness on this point other than Foreman testified at Ghiassi's change-of-plea and sentencing hearings is beside the point. In the sentencing context, the district court is not bound by the rules of evidence and, so long as it is reliable, may consider a wide range of evidence, including hearsay, that might otherwise be inadmissable at trial. Fed. R. Evid. 1101(d)(3); U.S.S.G. § 6A1.3(a); *e.g.*, *Grigsby*, 692 F.3d at 788; *United States v. Nunez*, 627 F.3d 274, 281 (7th Cir. 2010). Moreover, as the Sixth Amendment's confrontation clause does not apply to a sentencing proceeding, the court may rely on the testimony or other statement of a witness even if that witness has not been subject to cross-examination by the defendant. *See Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 426 (1959) (due process); *Williams v. New York*, 337 U.S. 241, 69 S. Ct. 1079 (1949) (due process); *United States v. Harmon*, 2013 WL 3466881, at *10 (7th Cir. July 11, 2013) (citing *United States v. Isom*, 635 F.3d 904, 907-08 (7th Cir. 2011)); *United States v. Miller*, 450 F.3d 270, 273 (7th Cir. 2006) (citing, *inter alia*, *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005)), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007).

The district court's finding had the support of Wiseman's statements, both to Special Agent Foreman and to the district court at her own change-of-plea and sentencing proceedings. Foreman testified that Wiseman told him she had purchased six handguns for Ghiassi at Gander Mountain and another two at Bass Pro Shops. This was obviously a point within Wise-

man's personal knowledge, as she bought the guns and gave them to Ghiassi.

It is true, as Ghiassi points out, that Foreman was unable to independently verify that Ghiassi ultimately possessed each of eight firearms Wiseman had purchased; but this was simply a factor for the district court to consider in assessing the credibility of her testimony rather than one which precluded the court from crediting her or which calls into doubt the sufficiency of the evidence underlying the court's finding as to the number of guns Wiseman possessed. *See Isom*, 635 F.3d at 907-08.

Moreover, Wiseman's statements were corroborated in part. Ghiassi himself had admitted to Foreman that Wiseman had bought guns for him at both Gander Mountain and Bass Pro Shops; and the surveillance video at Bass Pro Shops documented both the fact of one of those purchases as well as the modus operandi that Wiseman had described. Ghiassi also admitted at the November 2 hearing that he did have at least temporary possession of all eight of the guns (so that he could clean them and paint the engraving for Wiseman), and longer-term possession of two of them. For his part, Gamblin confirmed that Ghiassi had given him a number of guns for safekeeping one week prior to their arrest. And, of course, Foreman indicated that a total of nine guns were seized in the course of his investigation.

Only Ghiassi himself gave evidence that was in any way consistent with Wiseman's testimony. His own story as to the number of guns he possessed, let us say, evolved over time: at the first change-of-plea hearing, he said that he only possessed one gun in addition to the AK-47; at the second hearing he

upped that figure to two. And yet, although he denied that he had ever asked Wiseman to purchase firearms for him, and insisted that he did not take possession of all eight firearms from her, he did acknowledge that he possessed all of them at least temporarily in order to clean and paint the engraving on them for Wiseman. We cite this last aspect of his testimony not as an admission that Ghiassi did, in fact possess all eight guns, *but see United States v. Matthews*, 520 F.3d 806 (7th Cir. 2008) (felon's voluntary, albeit momentary, possession of unloaded firearm sufficient to establish guilt under § 922(g)(1)), but rather as an example of his shifting position as to the guns, which undercut his own credibility.

The district court was thus presented with a classic choice of whom to believe. Although the court did not receive testimony as to the number of guns Ghiassi possessed in a formal, adversarial manner, the court nonetheless saw and heard each of the three witnesses whose knowledge and credibility was key to determining how many guns Ghiassi possessed. Ghiassi addressed this point at both of the two hearings before the court, and Foreman likewise recounted Ghiassi's and Wiseman's post-arrest statements at those hearings. (Foreman, by the way, was subject to cross-examination on both occasions.) And, after the dispute as to the number of guns Wiseman purchased for Ghiassi revealed itself at Ghiassi's first change-of-plea hearing, the court questioned Wiseman on this subject at her own sentencing. The court was therefore uniquely and well-situated to assess the credibility of these witnesses.

We have no reason to second guess the court's decision to credit Wiseman. It is true, as Ghiassi points out, that Wiseman

in pleading guilty to the false statement charge admitted that she had lied in purchasing guns on Ghiassi's behalf. But that acknowledgment, and for that matter her resulting status as a convicted felon, were hardly unusual, and certainly they did not render her untrustworthy as a matter of law. The district judge, having accepted Wiseman's plea and sentenced her, certainly was aware of these blemishes, and Ghiassi's counsel reminded the court of them in urging it to reject her statements. The court found her credible nonetheless.

Ghiassi's alternative argument, that the court deprived him of due process by relying on the statements Wiseman made about the guns at her own sentencing hearing, without giving him an opportunity to cross-examine her, is a non-starter. Ghiassi and his counsel were on notice from the beginning that the court intended to rely on Wiseman's statements, and they had ample opportunity to contest those statements.

First, the district court made clear at Ghiassi's first change-of-plea hearing that it intended to ask Wiseman about the number of guns she gave to Ghiassi when she appeared before the court for sentencing, so it could not have surprised Ghiassi and his counsel when, at the second hearing, the district court read from a transcript of the statements Wiseman made on this subject at her sentencing. Indeed, given Foreman's testimony at the first hearing recounting the statements Wiseman had made to him regarding the guns she purchased for Ghiassi, the defense knew what Wiseman was likely to say on the subject when asked by the district court. Yet, at no time did Ghiassi's counsel object to the court's plan to question Wiseman or to rely on her answers, so at most our review would be for plain

error. *See, e.g.*, *United States v. Peterson*, 711 F.3d 770, 774-75 (7thCir. 2013).

Second, knowing that the court considered Wiseman to be a crucial witness and that the court intended to question her on that point at her sentencing, nothing prevented Ghiassi's counsel from obtaining a transcript of her sentencing in preparation for his client's own sentencing, which took place more than five months after Wiseman's. It is thus inaccurate to contend, as Ghiassi has, that he had no access to the evidence on which the court relied in sentencing him.

Third, Ghiassi's counsel could reasonably anticipate that the court would resolve the dispute as to the number of guns his client possessed in the event that the court accepted Ghiassi's guilty plea at the second hearing in November, as it ultimately did. Ghiassi's counsel says that he assumed the ongoing dispute as to the number of guns would lead the court to reject the plea. That was one possibility, given the court's decision to continue the change-of-plea hearing rather than accept the plea at the first hearing. But as Ghiassi's counsel has himself acknowledged, Ghiassi freely admitted that he possessed the AK-47 that he sold to Foreman, so his candor and culpability as to the charge to which he was pleading was never truly in doubt. Moreover, when the court continued the change-of-plea hearing, it also ordered the preparation of a PSR, which was an unmistakable signal that the court might accept Ghiassi's plea and move forward to sentencing. The PSR itself advocated a four-level enhancement pursuant to § 2K2.1(b)(1), based on the notion that Ghiassi had possessed eight or more guns, and Ghiassi had objected to that aspect of the PSR in advance of the second hearing. So all parties

understood that the number of guns Ghiassi possessed would be an issue for the court to resolve if and when it accepted Ghiassi's guilty plea and proceeded to sentencing.

Fourth, as we have already noted, the Sixth Amendment's confrontation clause does not apply at sentencing, so the court was not precluded from relying on Wiseman's statements simply because Wiseman had not been subject to adversarial questioning. Instead, as we have also noted, reliability is the criterion for the evidence which a sentencing judge may consider. There is no reason to doubt that Wiseman's statements were reliable: she was speaking from personal knowledge, the statements were against her own penal interest, she made the statements in court, the court found her credible, her statements in court were consistent with what she previously had told Foreman, and they were corroborated in significant part by other evidence.

Fifth, at no time did Ghiassi seek to have Wiseman testify at his own sentencing, nor has he even articulated what, if anything, he expected adversarial questioning might reveal that the court did not already know. As we have discussed, Ghiassi simply emphasizes Wiseman's acknowledged history of making false statements in obtaining firearms for him; but, of course, the court was necessarily aware of that history. We can see no sense in which Ghiassi was deprived of a fair sentencing hearing by the court's consideration of the statements Wiseman made at her own sentencing.

The court's finding that Ghiassi possessed all eight of the guns that Wiseman purchased, and that his statements to the court denying the same were false, in turn supports the

decision to deny him any credit for acceptance of responsibility pursuant to § 3E1.1. Ghiassi's brief concedes that "if this Court determines the trial court did not err in making its relevant conduct determination then the denial of [credit for] acceptance of responsibility naturally follows." Ghiassi Br. 10. In light of that concession, our comments on this point may be brief. Although Ghiassi only pleaded guilty to the charge that he unlawfully possessed the AK-47, he does not dispute that the eight guns that Wiseman purchased for him constitute relevant conduct properly considered by the court in ascertaining his Guidelines offense level. A defendant is not required to affirmatively admit relevant conduct beyond the offense of conviction in order to be credited for accepting responsibility, but neither may he falsely deny or frivolously contest such conduct. § 3E1.1, comment. (n.1(A)); *see, e.g., United States v. Etchin*, 614 F.3d 726, 739-40 (7th Cir. 2010); *United States v. Chen*, 497 F.3d 718, 720-21 (7th Cir. 2007). Ghiassi chose to dispute his possession of the additional firearms purchased by Wiseman, to label her a liar, and to make multiple statements to the court denying responsibility for those firearms that the court deemed incredible. The court committed no clear error in denying him credit for acceptance of responsibility pursuant to § 3E1.1(a). *See, e.g., United States v. Black*, 636 F.3d 893, 900 (7th Cir. 2011) (decision to deny credit for acceptance of responsibility is reviewed for clear error).

In sum, the district court committed no error in determining Ghiassi's offense level and the resulting Guidelines range. Ghiassi's sentence was at the low end of that advisory range and thus is presumptively reasonable. Ghiassi has not other-

wise challenged the reasonableness of his sentence. We therefore AFFIRM the sentence.